BREKKE, Appellant, v. CREW, et al, Respondents.

(178 N. W. 146.)

(File No. 4553.    Opinion filed May 24, 1920.    Rehearing denied
July 27, 1920.)

1. **Assignment for Creditors—Debtors' Property, Assignment to Trustee To Pay Assenting Creditors Who Agree to Discharge Debts, Surplus Payable Assignor, Whether Assignment for Creditors' Benefit or Mere Security Joas v. Jordan Distinguished and In Effect Reversed.**

   A conveyance by a debtor of all his property not exempt to a trustee to be disposed of by him and net proceeds above expenses of the trust to be used to pay and discharge, if the residue of said proceeds be sufficient, all the debts and liabilities due and owing by debtor to those of his creditors who shall become parties hereto, and who shall in consideration of the promises, undertake and agree upon payment made whether in whole or in part, to fully release, discharge and absolve debtor from all indebtedness to them or either of them, and if such proceeds are insufficient thereto then to be applied prorata to each creditor's claim, and if after all of said debts are paid in full, any surplus remains, it shall be repaid to the debtor,—is not (as seemingly held in Joas v. Jordan 31 S. D. 379) a conveyance in nature of a security for benefit of creditors assenting thereto, but constituted a general assignment under provisions of our Code; it did not constitute a mortgage, but was invalid as against a non-assenting creditor. In the Joas case the deed of assignment was attacked, not on the ground that it was void under our present Sec. 2048, Rev. Code 1919, but because of a claim of actual fraud rendering it void under our present Sec. 2041, Rev. Code 1919, which provides that any transfer is void against creditors if made "with intent to delay or defraud any creditor."

2. **Same—Requiring Creditor Beneficiary as Condition to Receiving Benefit, to Discharge His Claim—"Majority," "Minority" Rule —Majority Rule in S. D., Joas Case Interpreted and Discredited re Statute—Common Law Assignment Recognized by Code.**

   Judicial reports and text-books have much considered two lines of holdings—one known as the "majority rule," the other as the "minority rule"—as to the effect upon an assignment for benefit of creditors of a provision requiring a creditor as a condition to receiving benefits thereunder, to accept such benefits in full discharge of his claim. Respondents' contention that the holding of this Court in Joas v. Jordan, supra, has the

support of authorities sustaining the "minority rule," have apparently overlooked three important facts: (1) this state, under Sec. 2048 Rev. Code 1919, wherein it makes void an assignment for benefit of creditors if it tends to coerce any creditor to release or compromise his demand, or if it reserve to the debtor any interest in the assigned property save what is exempt, before all existing debts are paid, has adopted the majority rule; (2) there is no adjudicated or text-book authority whether holding to the "majority" or "minority" rule, except Joas v. Jordan, supra, but that holds a deed, such as the one at bar, to be an assignment for benefit of creditors—they differ only as to whether it is a valid or void assignment; (3) the Court in the Joas case did not base its decision upon either the "majority" or "minority" rule, but solely upon the premise that the instrument before it was not an assignment for benefit of creditors; and the Court in that decision concluded, that under what is now Sec. 2039, Rev. Code 1919, which allows preferences, the instrument was valid as against an attacking creditor; and the Court having there erred in its premise, its conclusion was erroneous. **Held,** further, that Sec. 2045, Rev. Code 1919, prescribing how an assignment for benefit of creditors shall be executed, etc., does not change the fundamental requisites of such an assignment but leaves them as at common law; and if the instrument before us would have been an assignment at common law it is one-"under the provisions of our Code;" therefore it cannot be a deed in nature of security; whereas under the Joas decision, a writing which, because of the nature of the title it passed would at common law have been an assignment for benefit of creditors, but containing a provision not affecting such title, yet conflicting with the statute and rendering it void or voidable, effects a conveyance in nature of security—a holding without reason or logic.

3.  **Same—Whether Instrument Transfers Defeasible Title Without Redemption, Or Whether Grantor Remains Owner and Property. A Security, The Test of Validity—Instrument Construed.**

This case, as in the Joas case, presents but one question: does the instrument transfer an absolute indefeasible title to the property, leaving in grantor no control over or right of redemption in or defeasance, leviable on as his and nothing but a mere right to any proceeds left after conditions thereof are complied with; or does it leave in grantor a redemption right, is he still owner and the property merely a security for his debts? If the first, then that it may be voidable because of some statutory provision cannot change the nature of the estate or title passing thereunder and render it a conveyance of different nature. The instrument at bar, if operative at

all, passes an absolute title to grantee, the words of grant being absolute, the habendum clause disclosing that grantee is to have absolute title with full power over the property, there being no redendum except the reservation of excess proceeds. Sandmeyer v. Dakota F. & M. Ins. Co., 2 S. D. 346, interpreted, distinguished and approved re instrument of mere security. And the instrument before us meets the tests specified in the Sandmeyer case.

4.   **Same—Distinction Between Absolute Conveyance as Assignment and Mortgage Deed, Defined.**

The distinction between an absolute conveyance constituting an assignment for benefit of creditors, and a mortgage or deed of trust in nature of a mortgage, may be thus defined: a mortgage is the conveyance of an estate, or pledge of property, as security for payment of money, or the performance of some other act, and conditioned to become void upon such payments or performance; while a deed of trust in nature of a mortgage is a conveyance in trust by way of security, subject to condition of defeasance, or redeemable at any time before sale of the property. By an absolute deed of trust, grantor parts absolutely with title, which rests in grantee unconditionally for the purpose of the trust, the trustee to raise a fund to pay debts; while the former is a conveyance in trust for purpose of securing a debt subject to a condition of defeasance. An assignment is not mere security for payment of, but is an absolute appropriation of property to the payment of debts; does not create a lien to creditors on property which in equity is still regarded as the assignor's but passes both legal and equitable title beyond control of assignor, without equity of redemption, and the trust resulting to assignor in the unemployed balance does not indicate such an equity.

5.   **Same—Procedure, Proviso, Re Assignment, Preference, Priority; Void Assignment Re Release, Compromise—Statutes, Tests Under Re Release Of Debts—Minority View Not Conceded.**

In view of Sec. 2045, Rev. Code 1919, providing that an insolvent debtor may, in good faith, execute an assignment of property to an assignee, in trust for satisfaction of his creditors, subject to provisions of this title relative to trust and to fraudulent transfers, with a proviso invalidating the assignment if it be upon, or contain any trust or condition by which any creditor is to receive a preference or priority, in which latter case the property shall become a trust fund to be administered in equity for the benefit of all creditors pro rata; and Sec. 2048, providing that an assignment for benefit of creditors is void against any creditor not assenting thereto, where (1) it tends to coerce any creditor to release

or compromise his demand, or (3) if it reserve any interest in the assigned property to assignor or for his benefit before all his existing debts are paid, other than exempt property; and in studying the development of the law relating to assignments for benefit of creditors, two provisions in assignments are seen to come under condemnation: (A) Where the assignment is of all debtor's property and creditors are to be paid; first, those who execute releases of their claims in consideration of what they may receive; second, those who do not give such releases: (B) Where, as in the provisions in the deed now before us, no creditor receives anything except upon condition that he execute a release. **Held,** that either of these provisions violates Subd. 1, Sec. 2048, because either one tends to coerce creditors into releasing or compromising their claims. Furthermore, under "A," assignor parts with all his property and receives nothing back unless **all creditors** are first paid in full; while under "B" he parts with all his property, but if all creditors fail to be coerced, then the surplus not so used to pay those who do submit to coercion does not go to the other creditors but is reserved to assignor—a clear violation of Subd. 3, 2048; and because of the possibility that assignor may get back property under an assignment containing provision "B," the courts have distinguished between "A" and "B," and, where uncontrolled by statute, have sometimes held "A" and "B" void. The early decisions and text-books convince that provisions "A" and "B" were common means by assignors in trying to coerce creditors and to reserve to themselves some interest in the assigned property before paying creditors in full; and it was as a statutory declaration of adjudicated law that statutes, such as said Subds. 1 and 3, were enacted; and if the assignment violates either of said subdivisions it is void as to any non-assenting creditor. The dissenting Justices, while agreeing that this assignment violates both said subdivisions, say it also violates Sec. 2045, because, as they contend, provision "B" found therein is a condition which creates a preference to a creditor, and that therefore the assignment should have been administered as a trust under that section. Conceding the premise, we do not concede the correctness of the conclusion they draw therefrom.

6. **Same—Territorial Laws re Payment of Releasing, Non-releasing, Preferred Creditors—Condemnatory Court Decisions, Grounds Of—Later Statutes Construed—Creditors Under Void Assignment Not Relegated to Equity Administration.**

Under Territorial Civil Code 1865, following Secs. 1928-1931, concerning preferences under assignments for benefit of credit-

ors, Sec. 1932 (our present Sec. 2048) contained, as Subd. "2" (just preceding our present Subds. "1" and "3". of Sec. 2048) a provision rendering void the assignment if it gives a preference dependent upon any condition or contingency. In the 1877 Code, what are now Secs. 2045 and 2048 were adopted, all other references to preferences in other sections being eliminated from the assignment law. Secs. 1928-31 and Subd. "2" of the 1865 Code were dropped and our present 2045 adopted; and what is now our Sec. 2039, w·s part of our law, under which section a debtor might prefer a creditor in any instrument other than an assignment for benefit of creditors—a mere preference was not ordinarilly considered fraudulent; therefore Subd. 2, Sec. 1932, 1865 Code, was not harmonious; to harmonize which with the general statute, the Legislature so provided that a mere preference not violative of any other provision of Sec. 1932, 1865 Code, should not void the assignment at creditor's objection, but should itself be void, the assignment, if otherwise valid, to be administered in favor of all creditors; the law-makers not intending to limit effect of the other subdivisions of said Sec. 1932, since they were preserved therein; which change harmonized the stat-utes with the current decisions in states having no statutes. The Courts, in condemning assignments containing provision "B," and sometimes those containing provision "A" did so, not because they created preferences, but because they attempted to extort absolute discharges as consideration for a partial dividend, or to prescribe for debtor a private bankrupt law, or to violate Statute 13 Elizabeth; on one or more of which three grounds the courts held assignments void because containing either provision "A" or "B," or in case of provi-sion "B," on the additional ground of unlawful reservations, and not generally because creating a preference. Therefore, **held**, that in Territorial days, we adopted by Subd. 3, Sec. 1932; supra, what is known as the "majority rule;" while the legislature (in 1877) put an assignment containing a prefer-ence, but otherwise valid, on a different plane than one which violates either one of Subds. 3 to 8 of Sec. 1932; but the Legislature in enacting what is now Sec. 2045, 1919 Code, did not intend to deprive a creditor of the right to treat an assignment void which theretofore was void under Subds. 3 and 5, Sec. 1932 (now Subds. 1 and 3, Sec. 2048) and does require him to either submit to coercion such as found in the deed before us or else ask the court to administer the property as a trust..

7.  **Same—Assignment Effecting Coercion, Compromise Without Effective Preference, With Alternative to Invalidate Reserva-**

tion to Assignor—Fraudulent Purposes—Quaery, Re Fraudulent Transfer Statute and "Preference" Statute.

Under the assignment before us, debtor did not desire to prefer one creditor over another—an event which would defeat his purpose—but the provision for preference, if rightly termed such, was merely the means employed to coerce creditors into compromising their claims, failing in which to reserve a benefit to assignor before all creditors were paid in full. Held, that both ends so sought were fraudulent, no matter what the means employed, since their use would render the assignment void as to non-assenting creditors; and the attitude of our dissenting Colleagues, i. e. if there is a provision preferring some creditor if one or more refuse to be coerced, that then the assignment is enforceable as a trust regardless of Sec. 2048, is not conceded; the objecting creditor having a right to rely on Sec. 2048 as rendering the assignment void. Query: Whether in view of Sec. 2041, Rev. Code 1919, rendering transfers with intent to defraud certain creditors void, would an assignment for benefit of creditors executed with intent to defraud certain creditors, but containing a clause violating the "preference" provisions of Sec. 2045, must such creditors surrender their rights under Sec. 2041, and ask the court to administer the property as a trust fund?

8.   Same—Assignment "In Good Faith," Not "With Intent to Defraud," But Effecting Preference, Priority, As Resulting in Trust Fund —Statutes—Assignment Held Void Even If Effecting Preference, No Administering in Equity.

The very provisions of Sec. 2045 (the general provision concerning assignments by insolvent debtors) answer our minority Colleagues' contention, since only the property transferred by an assignment "in good faith" (not in violation of Sec 2041), and "in conformity with the provisions of this charter" (not in violation of Sec. 2048, a part of such chapter), if it be upon, or contain any condition resulting in creditor's receiving preference or priority over another creditor, be administered as a trust fund in equity. Therefore, held, that the deed before us is an assignment for benefit of creditors; and even if held to be "upon" or to "contain" a "condition" by which any creditor is to receive "a preference or priority over any other creditor"—a matter at least questionable—yet, being void as to an attacking creditor under Sec. 2048, it cannot property be held valid as against him by administering it under Sec. 2045.

9.   Assignment for Creditors—Joas Case Descredited—Stare Decisis Not Applicable—Grounds Stated—Former Decision Ignoring Statutes—Our Judicial Policy Stated.

In discrediting, and in effect setting aside the Joas case (31 S D. 379) and in refusing to invoke the maxim, "Stare decisis, et non quieta movere," we do so because the Joas case has never been upheld by this or any other court of last resort, but has been criticised, or excused as possibly sustainable under a local statute—by courts referring to it; which, in effect, reverses an opinion of this Court (Sandmeyer v. Dakota F. & M. Ins. Co., 2 S. D. 346) which is concededly correct; it is erroneous beyond all question; was arrived at without consideration of either Sec. 2045 or Sec. 2048, Rev. Code 1919; that the doctrine of stare decisis should not be pressed too strongly; and hasty or crude decisions should be examined without fear, and revised without reluctance, rather than have the character of our law impaired and harmony of the system destroyed by perpetuity of error; that said maxim, as interpreted by the courts, means no more than that matters properly decided shall not thereafter be differently decided (this statement not applying to matters based on improper legal process); otherwise the law would lose its necessary flexibility and a hidebound system of jurisdiction would result; that unless there is some particular reason why an erroneous ruling should be followed no court should be above reversing itself when it is clearly demonstrated it has made a mistake in a conclusion, especially so where the result has been to disregard a legislative enactment, as well as rules announced in former opinions of the Court.

10.    **Courts—Court Decisions Stare Decisis—Previous Error "As Rule of Property"—"The Greater Mischief" Rule—Joas Case, Whether Governing Property Rights.**

Recognizing the rule, that where error of a previous decision is recognized, but rules therein announced have become rules of property, the question whether the rule stare decisis shall be adhered to becomes a choice between two relative evils, and that the rule should be adhered to unless it appears that the evil resulting from the principle established must be productive of greater mischief to the community than can possibly result by disregarding the previous adjudication, yet, since "A," "a rule of property," is a settled legal principle governing ownership and devolution of property, the decision in the Joas case does not rise to that dignity; but, if it did, yet, under the facts before us and the authorities, we should not advocate the maxim in this case; if we would, we take from appellant (an attacking creditor) and all who in future may be creditors of one executing such an instrument, the statutory right to treat the conveyance as void; we give assenting creditors, to exclusion of those objecting, the pro-

ceeds of all assigned property, while upholding action of assign-
ors in coercing their creditors to release and compromise
their claims if only they would use this particular method,
while if we refuse to invoke it, we uphold the will of our
law-makers and give notice that statutory rights will be judic-
ially enforced; that while not preventing assenting creditors
from benefits of assigned property, we will make their rights
inferior to rights of non-assenting creditors where the assign-
ment violates Sec. 2048, and that we refuse to uphold clear
violations of statute.   Therefore, to refuse to follow the Joas
case will be productive of less mischief than to perpetuate its
errors.

    Gates and Smith, JJ., dissenting.

Appeal from Circuit Court, Hughes County.  Hon. JOHN F.
HUGHES, Judge.

Action by J. A. Brekke, against Charles E. Crew and William
W. Waite, to set aside an alleged assignment for benefit of cred-
itors.   From a judgment for defendants, plaintiff appeals. Re-
versed.

*Charles P. Warren,* for Appellant.

*Horner, Martens & Goldsmith,* for Respondent.

(4)  To point four of the opinion, Appellant cited: 5 C. J.
1038; Burrill Assignments (6th Ed.) Section 6; McClaren v.
Kramer (N. D.) 144 N. W. 85; re Courtney Mercantile Co.,
186 Federal 352.

(8)  Under point eight, Appellant submitted that: The trust
deed was made with intent and with the necessary effect of de-
laying and defrauding debtor's creditors, and is void under section
2368, R. C. C. 1903;

And cited: In re Watchman, 29 Federal Cases, No. 17251,
cited in Note 62 of 5 C. J., 1109, That the assignment is void
as against the plaintiff and all creditors of Waite not assenting
thereto, as coercing said creditors to release and compromise their
demands;

And cited:Sec. 2375, Civil Code 1903; 5 C. J. 1106; May v.
Walker (Minn.) 28 N. W. 252; Maclaren v. Kramer, 144 N. W.
(N. D.) 85.

Respondents cited:  Secs. 2366, 2379, 2380, 2381, 2382, C. C.
1903; Joas v. Jordan, 21 S. D. 379; Sandwich Mfg. Co. v.
Max, 5 S. D. 125; Cannon v. Demming, 3 S. D. 421.

WHITING, J. One Waite, an insolvent, conveyed all his property, real and personal, except exemptions, in trust to one Crew, who accepted the trust and took possession of the property conveyed. Brekke, a creditor of Waite, having, after the execution of the conveyance by Waite to Crew, procured and docketed a judgment against Waite, brought this action to have such conveyance set aside as fraudulent, and because it hindered and delayed the creditors of Waite and particularly because it hindered and delayed him in the enforcement and collection of his judgment. The trial court held the conveyance valid as against plaintiff, and plaintiff has appealed.

[1] That the conveyance is an assignment for benefit of creditors and void as against appellant, a nonassenting creditor, appears to us so clear that we would so hold without any discussion whatsoever, were it not for the fact that our predecessors held a conveyance in all things of the same force and effect to be a conveyance "in the nature of a security for the benefit of the creditors assenting thereto"; and that it "did not constitute a general assignment under the provisions of our Code"; that "while the trust deed may not technically be denominated a mortgage, it constituted in effect a mortgage"; and that it was valid even as against a nonassenting creditor. Joas v. Jordan, 21 S. D. 379, 113 N. W. 73. An examination of the briefs in the Joas Case discloses that the deed therein was attacked by the objecting creditor not on the ground that it was void under our present section 2048, Rev. Code 1919, but because of a claim of actual fraud rendering it void under our present section 2041, Rev. Code 1919, which provides that any transfer is void against creditors if made "with intent to delay or defraud any creditor." We have no doubt whatsoever but that, if our predecessors had had the benefit of a brief such as has been presented to us by appellant on this appeal, they never would have fallen into the errors disclosed by the opinion in the Joas Case.

But because of the ruling in the Joas Case and the apparent reliance placed thereon by the trial court in this case, and especially because the writer of this opinion was the trial judge in the Joas Case, we feel that, in reversing the trial court in the present case and thus reversing the holding of this court in the Joas Case,

we should point out most clearly, and even at length wherein the reasoning in the opinion in the Joas Case seems to be unsound and the conclusions reached therein erroneous.

The portions of the conveyance that are material to the question before us are as follows:

"The said party of the first part, in consideration of these premises and * * * has granted, bargained, sold and conveyed and assigned, and does by these presents grant, sell, bargain, convey and assign unto the said * * * Crew, * * * all and singular, his lands and tenements, goods, chattels, effects, claims, demands, and bills receivable, including accounts and evidence of indebtedness, together with all collateral thereto belonging or pertaining thereto, and all his property, real, personal and mixed, as well as choses in action, without reservation or restrictions whatever, except the exemptions allowed by law to the said party of the first part, which are expressly reserved from this conveyance and are described as follows, to wit: [Then follows detailed description of property claimed as exempt.]

"To have and to hold the said property, save and except that reserved herein, unto said party of the second part, his successors and assigns in trust, nevertheless, for the uses and purposes hereinafter set forth, to wit: The said party of the second part to take possession of all of said property and to sell and dispose of same at public or private sale, with all reasonable diligence, and to convert the same into money; also to collect all claims, demands and bills receivable, or settle, compromise and compound the same, or to sell and dispose thereof at either private or public sale; to hire and employ such agents or assistants for the purposes herein expressed as he may deem necessary; and with and out of the proceeds of such sales, and the proceeds of the collection or receipts made by the said party of the second part, or the property itself; First, to pay and discharge all the just debts and reasonable expenses against and charges of executing and carrying into effect the trust hereby created; second, to pay and discharge, if the residue of said proceeds be sufficient, *all the debts and liabilities due and owing by said William W. Waite to those of his creditors who shall become parties hereto and who shall, in consideration of the premises, undertake and agree upon payment made, whether in*

*whole or in part, to fully release, discharge and absolve said William W. Waite from all indebtedness to them or either of them;* and if the proceeds of said property shall not be sufficient to pay said debts, liabilities and interest in full, then to apply the same as far as they will extend to the payment of debts, pro rata in proportion to the ratio which each of such claims shall bear to the entire amount of indebtedness, so that each of said creditors shall receive a like percentage of the moneys received by the said party of the second part, without preference or favor; and if, after all of said debts, liabilities and interest are paid in full, there shall be any surplus remaining in the hands of the party of the second part, such surplus to be repaid to the said party of the first part, his heirs or assigns; [Then follows: (a) A promise by the first party to make, execute, and deliver such other, further and additional deeds of conveyance, bills of sale, transfers, and assignments as may be requisite and necessary to properly vest title in second party to the property assigned; (b) a detailed description of the property conveyed; (c) a promise to convey by proper conveyance any property that may be discovered to have been omitted.]

"It is hereby further agreed that this trust deed shall take effect from and after its execution by the said party of the first part * * * and its acceptance by the said party of the second part, and that said party of the second part shall thereupon take possession of the property hereby transferred, conveyed and assigned, and the said party of the second part hereby covenants and agrees with the party of the first part and with each of the creditors of the party of the first part who shall assent thereto, that he will faithfully execute the said trust hereby created."

Much is said in reports and text-books regarding two lines of holdings—one known as the "majority rule," the other as the "minority rule"—as to the effect, upon an assignment for benefit of creditors, of a provision therein requiring a creditor, as a condition to receiving benefits thereunder, to accept such benefits in full discharge of his claim. See cases cited in notes 50 L. R. A. (N. S.) 714—753; 5 Am. & Eng. L. & P. 1028-1030; 5 C. J. 1105-1106; 2 R. C. L. 670-672; Burrill on Assignments (5th Ed.) §§ 184-196. Respondents, while conceding that "there is perhaps

some reason ·for the majority rule," yet rest their defense upon the contention that the holding in Joas v. Jordan has the support of the authorities sustaining the "minority rule." Respondents have apparently overlooked three very important facts: (1) This state, by statute, has adapted the majority rule. Section 2048 Rev. Code 1919; (2) there is not one single authority, either in text-books or reports, whether holding to the "majority" or "minority" rule, except Joas ·v. Jordan, supra, but that holds a deed such as the one before us to be *an assignment for benefit of creditors*—they differ only as to whether it is a valid or void assignment; (3) the court, in the Joas Case, did not base its decision upon either the "majority" or "minority" rule, but solely upon the premise that the instrument before it *was not an assignment for benefit of creditors.* The court said:

"We are clearly of the opinion that in the case at bar the purported deed of trust was in the nature of a security for the benefit of the creditors assenting thereto, and did not constitute a general assignment under the provisions of our Code. * * * While the trust deed may not technically be denominated a mortgage, it constituted in effect a mortgage."

Starting from the above premise, the court, following its prior holding in Sandwich Mfg. Co. v. Max, 5 S. D. 125, 58 N. W. 14, 24 L. R. ·A. 524, was bound to, and did, reach the conclusion that, under what is now section 2039, Rev. Code 1919,, the instrument was valid as against appellant. Section 2039 provides that:

"A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand, in preference to another."

It is clear that, if the court erred in its premise, then its conclusion was erroneous.

[2] What did the court mean by the phrase, "under the porvisions of our Code," as the same is found in the above quotation from the opinion in the Joas Case? While our Code prescribes how an assignment for benefit of creditors shall be executed, and prescribes what may and what shall be done thereunder, it does not, in any manner, change the fundamental requisites of an assignment for benefit of creditors, but leaves them as at

common law. Just as an instrument which, because of its terms, is a deed is none the less a deed if voidable on account of some unlawful provision therein, so an instrument which, because of its terms, constitutes an assignment for benefit of creditors, remains still such an assignment, though voidable because of provisions therein. If the instrument before us would have been an assignment at common law it is one "under the provisions of our Code."

That the instrument before us is an assignment for the benefit of creditors is not only sustained by every authority that can be found in text-books or reports of other courts, but, as we shall later show, by the words of this court penned by the same jurist who wrote the decision in the Joas Case. If it is such an assignment, it is not, and cannot be, a deed in nature of security.

Under the holding in the Joas Case, a writing which, because of the nature of the title passing to the grantee, would, at common law, have been an assignment for the benefit of creditors, but which has some provisions therein *not affecting the nature of the transfer,* yet conflicting with our statute and rendering it void or voidable, immediately becomes a conveyance in the nature of security. Certainly there is neither reason nor logic in such a holding.

[3] There is in this, as there was in the Joas Case, but one question: Does the instrument before the court transfer an absolute indefeasible title to the property, leaving in the grantor no control over the property, no right of redemption, no defeasance, nothing that could be levied on as his, nothing but a mere right to any proceeds left after the conditions thereof have been complied with; or does the instrument leave in the grantor some right of redemption, is he still the owner of the property and the property merely a security for his debts? If the first, then the fact that it may be voidable because of some statutory provisions cannot change the nature of the estate or title that would have passed thereunder, and render it a conveyance of an absolutely different nature. That the instrument before us, if operative at all, passes an absolute title to the grantee named therein is perfectly clear. Could any one suggest any word or words, ordinarily used, that would transfer more absolutely all of Waite's rights, title, and interest in and to this property? It must, of course, be borne in mind that the estate that is transferred, if anything is

transferred, does not depend upon the portion of the instrument which we have italicized—that portion may affect the validity, but it does not affect the nature of the transfer. The words of grant are absolute; the habendum clause discloses that the grantee is to have the absolute title with full power over the property; there is absolutely no redendum except the reservation of excess proceeds.

This court, speaking through Justice Corson, in its opinion in Sandmeyer v. Dakota F. & M. Ins. Co., 2 S. D. 346, 50 N. W. 353, pointed out clearly the features of an assignment for benefit of creditors which distinguish it from a writing in nature of security for creditors. The court held the instrument then before it to be a mere security in the nature of a mortgage. It based its holding partly upon the use of the words "secure" and securing," which qualified the words of transfer in such instrument—they being used in such a way that they could not be construed to mean "payment." It based its holding also upon the use of words which limited the powers of the grantee so that he could act only in the name of the grantor. Nothing of the kind can be found in the instrument before us—absolutely no word limiting or qualifying the words of transfer; absolutely nothing restricting the power of the grantee or requiring him to act in name of grantor. In the Sandmeyer Case, the court referred to the fact that the form of assignments for benefit of creditors has been so long in use as to be well understood. This is certainly true, and the instrument before us follows such form to the very letter. The court further said as to the requirements of an assignment for benefit of creditors:

"It must appear that the assignment is absolute, so as to vest the legal and equitable title to the property in the assignee, free from all control of the assignor, and thereby enable the assignee to transact all the business pertaining to the property in his own name as assignee and not in the name of the assignor."

[4] The instrument before us meets these tests in full. No further citation of authority should be necessary, yet we cite 5 A. & E. Ency. L. & P. pp. 1009-1013; 5 C. J. 1038-1043; 2 R. C. L. 662; Burrill on Assignments (5th Ed.) §§ 7, 8. We doubt if a better statement of the distinction between an absolute con-

veyance constituting an asignment for benefit of creditors and a mortgage or deed of trust in the nature of a mortgage can be found than the following, from the opinion in Hoffman v. Mackall, 5 Ohio St. 124, 64 Am. Dec. 637:

"A mortgage is the conveyance of an estate, or pledge of property, as security for the payment of money, or the performance of some other act, and conditioned to become void upon such payment or performance. A deed of trust in the nature of a mortgage is a conveyance in trust by way of security, subject to a condition of defeasance, or redeemable at any time before the sale of the property. * * * By an absolute deed of trust, the grantor parts absolutely with the title, which rests in the grantee unconditionally, for the purpose of the trust. The latter is a conveyance to a trustee for the purpose of raising a fund to pay debts; while the former is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance."

We would also quote with approval the following from Burrill on Assignments (5th Ed.) § 6:

"An assignment is more than a security for the payment of debts; it is an absolute appropriation of property to their payment. It does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and the equitable title to the property absolutely beyond the control of the assignor. There remains, therefore, no equity of redemption in the property, and the trust which results to the assignor in the unemployed balance does not indicate such an equity."

In Smead v. Chandler, 71 Ark. 505, 76 S. W. 1066, 65 L. R. A. 353, the court said:

"That test is [the test of an asignment,] Was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title, and so make an appropriation of the property affected to the raising of a fund to pay debts?

Apply this test to the instrument before us, and it answers it fully.

We quote, with approval, the following from the opinion, In re Courtenay Mercantile Co. (D. C.) 186 Fed. 352, decided under North Dakota statutes identical with our present statute. We

would simply note that the instrument before the court was on all fours with the one before us, and that there is absolutely no "local statute" upon which the Joas decision can stand:

"Counsel for the mercantile company contends that the restriction above quoted, limiting the creditors who shall receive the benefit of the deed to those who shall become parties to it and release their claims in full, destroys the character of the instrument as a general assignment, and converts it into a mere security for those creditors who shall decide to accept its benefits. I cannot adopt that interpretation. As to the effect of such a restrictive clause upon a deed of assignment for the benefit of creditors, there is great conflict in the authorities. In some jurisdictions, it is held to render the instrument void; in others, it is considered valid. These authorities are collected in the last edition of the American and English Encyclopedia of Law and Practice, at page 1028. In the present proceeding I do not deem it necessary to decide which class of decisions represents the sounder view of the law. In all jurisdictions it is held that the deed is valid as between the parties, and can only be assailed by creditors who do not consent to its provisions, and whose rights are thereby prejudiced. As against the assignor, it is uniformly treated as a general assignment. The only exception that I have found is the case of Joas v. Jordan, 21 S. D. 379, 113 N. W. 73. If that decision can be sustained at all, it must receive its support from the local statute.

"On the face of the instrument here involved, it was a disposition of all the property of the assignor for the benefit of his creditors. All the creditors had a right to accept its benefit. The assignor could in no way control this discretion. Their right to do this would continue until the estate had been distributed. The character of the instrument should be judged as of the time of its execution and delivery. Otherwise the whole estate could be converted into cash, and administered under the deed, without its being possible to ascertain whether it was an assignment for the benefit of creditors, or a security for a part of the creditors."

The Courtenay Case was appealed to the Circuit Court of Appeals, and that court, in Courtenay Mercantile Co. v. Finch, Van Slyck & McConville, 194 Fed. 368, 114 C. C. A. 328, in speak-

ing of the provision that the proceeds of the property should be
distributed among the creditors who accepted the terms of the .
instrument, said:.

"This certainly did not change its character. So far as the
Courtenay Mercantile Company was concerned, they conveyed all
their property to the trustee for the benefit of their creditors, and
the instrument speaks of the date of its execution and delivery.
It could not be known at that time but that all of the creditors
would accept its provisions. Had all the creditors accepted, it
certainly would have operated as a general assignment. We do
not think that the question as to whether an instrument of that
character constitutes a general assignment or a mortgage is de-
pendent upon the subsequent event of its acceptance by each
and all of the debtor's creditors."

In Maclaren, etc., v. Kramar, 26 N. D. 244, 144 N. W. 85,
50 L. R. A. (N. S.) 714, the court had before it an instrument
in the form of an assignment for benefit of creditors, which con-
tained a provision like the one in the instrument before us and
in the instrument before the court in the Joas Case. The court,
in speaking of the contentions of the assignee, said:

"They assert, * * * second, that such instrument is in any
event not a general assignment for the benefit of creditors, but a
mere security transaction, wherein the debtor exercised his legal
right to prefer certain of his creditors, citing and relying upon
the case of Joas v. Jordan, 21 S. D. 379, 113 N. W. 73, and
McAvoy v. Jennings, 44 Wash 79, 87 Pac. 53."

From the above it is clear that the court of our sister state
was called upon to consider the soundness of that part of the
opinion in the Joas Case which we have assailed. Further, in this
connection, the court stated that—

The contention of the assignee "that the instrument should
be construed as a security transaction, and upheld under our Code
provisions permitting a debtor to prefer his creditors, seems to
have the support of numerous courts, including the South Dakota
and Washington courts."

It then refers to the decision in the Joas Case, supra, quot-
ing freely therefrom, and to the decision in McAvoy v. Jennings,
44 Wash. 79, 87 Pac. 53, and then says:

"The Washington court gives similar reasons to those of the South Dakota court for upholding the agreement upon the theory that it was a security transaction, and that the insolvent debtor had a right to prefer one class of creditors to the exclusion of others. With due respect for these courts, we are unable to concur in the conclusion or reasoning adopted in either of such cases. Obviously, it was the intention of the debtor, in executing the instrument in question, not to secure certain of his creditors, but, on the contrary, his intention clearly was to make a general assignment of the property therein described for the benefit of such of his creditors as would consent to release their claims in full."

In connection with the above quotations from the North Dakota case, we again assert that there are not "numerous courts" supporting the holding in the Joas Case—that our court stands absolutely alone. The case of McAvoy v. Jennings, supra, does not give the slightest support to the proposition upon which the decision in the Joas Case was based, and which, as stated in the North Dakota case, was contended for by the assignee named in the instrument before it.

[5] It, therefore, being clear that the deed before us is an assignment for benefit of creditors, we would not feel called upon —in view of the concession of respondents that if it were an assignment it would be void— to do more than to call attention to the provisions of section 2048, Rev. Code of 1919, and to note wherein this deed violates such provisions, were it not that a minority of this court are of the opinion that, invoking the rule of stare decisis, we should follow the ruling in the Joas Case; or, if we do not invoke such rule, then that we should hold that this deed is "upon or contains * * * [a] condition by which any creditor. * * * [may] receive a preference * * * over any other creditor," and that therefore, regardless of whether its provisions violate said section 2048, the property conveyed thereby should be administered as a trust fund under section 2045 of said Code.

The parts of sections 2045 and 2048 material to the question before us are as follows:

Section 2045. "An insolvent debtor may, in good faith, execute an assignment of property to one or more assignees in

trust towards the satisfaction of his creditors, in conformity to the provisions of this chapter, subject, however, to the provisions of this title relative to trusts and to fraudulent transfers; * * * provided, moreover, that such assignment shall not be valid, if it be upon, or contain any trust or condition by which any creditor is to receive a preference or priority over any other creditor, but in such case the property of the insolvent shall become a trust fund to be administered in equity, in the circuit court, and shall inure to the benefit of all the creditors in proportion to their respective claims or demands."

Section 2048. "An assignment for the benefit of creditors is void against any creditor of the assignor not assenting thereto, in the following cases:

1. If it tend to coerce any creditor to release or compromise his demand. * * *

"3. If it reserve any interest in the assigned property, or in any part thereof, to the assignor or for his benefit before all his existing debts are paid, other than property exempt by law from execution. * * * "

One studying the development of the law relating to assignments for benefit of creditors will find that, at one time, almost any sort of a provision or condition was permissible, but gradually the law threw more and more restrictions around these instruments. Two provisions in assignments soon came under more or less condemnation:

(A) Where the assignment is of all the debtor's property and the creditors are to be paid; first, those who execute releases of their claims in consideration of what they may receive; second, those who do not give such releases.

(B) Where, as in the provision in the deed before us, no creditor receives anything except upon condition that he execute a release.

It is apparent that either of these provisions violates subdivision 1, § 2048, supra, because either one tends to coerce creditors into releasing or compromising their claims. Furthermore under A the assignor parts with all his property, and will never receive anything back unless *all creditors* are first paid, and paid in full; while under B the assignor parts with all of his prop-

erty, but, if he is not successful in his clubbing efforts because a part or all of his creditors refuse to be coerced, then such property or such proceeds thereof as are not used to pay those who do submit to coercion does not go to the other creditors, but is reserved to the assignor—a clear violation of subdivision 3, § 2048.. It is because of this possibility that the assignor may get back property under an assignment containing provision B that the courts have distinguished between A and B, and, where uncontrolled by statutes, have sometimes held A valid and B void. Skipwith v. Cunningham, 8 Leigh (Va.) 271, 31 Am. Dec. 642; note 2, 50 L. R. A. (N. S.) 730; Burrill (2d Ed.) pp. 157, 173. At page 173, Burrill declares the ground of distinction between A and B and the reason why the majority of the courts are against B to be because of such provision "reserving to the debtor himself the shares to which * * * creditors, had they agreed to release, would have been entitled." See, also, section 195, 5th Ed., Burrill. In 5 C. J. p. 1106, the author says that such provision "would enable every insolvent debtor * * * to dictate terms to his creditors which would make him independent of his legal obligation to devote his unexempted property unreservedly to the payment of his creditors, and enable him practically to reserve a trust for his own benefit. * * * "

A study of the early decisions and text-books leads to the conclusion that provisions A and B were perhaps the most common means used by assignors in trying to coerce their creditors and in attempting to reserve some interest in the assigned property to themselves before paying creditors in full; and it was as a statutory declaration of the law that had become established through the decisions of the courts that statutes, such as our subdivisions 1 and 3, § 2048, were enacted. But one thing would seem to us beyond all possible cavil—under the above subdivisions it matters not what the provision in the assignment may be, if it violates either of such subdivisions of the statute it renders the assignment void as to any creditor not assenting thereto.

Our colleagues question the last statement. They do not dispute but that the provision contained in this assignment violates both these subdivisions; but they say it also violates section

2045, and that, because of that fact, the assignment should be administered as a trust under that section. They contend that provision B, found in this assignment, is a condition by which one creditor may receive a preference over another. For the purposes of this opinion we concede the above premise upon which they base their conclusion; but we do not want to be understool as admitting its correctness.

[6] Let us note a little further the history of the law as the same pertained to provisions such as the ones in the deed before us. As the law stood in 1865, the majority of the courts condemned assignments containing provision B, while they were probably about equally divided as to provision A. But the holdings against these provisions were none of them based on the fact that they created preferences, but because they were: Attempts to extort an absolute discharge as a consideration for a partial dividend (Grover v. Wakeman, 11 Wend. [N. Y.] 187, and Albert v. Winn, 7 Gil. [Md.] 446); attempts of the assignor prescribe for himself a private bankrupt law (Miller v. Conklin, 17 Ga. 430, 63 Am. Dec. 248; attempts to violate St. 13 Eliz. (Miller v. Conklin, supra). See, also, as to the then status of the law chapters 11 and 13, of second edition of Burrill on Assignments. Such was the status of the law when the Territorial Civil Code of 1865-1866 was adopted. In that Code, after providing by sections 1928-1931 thereof what preferences could be made in an assignment for benefit of creditors, there was included in section 1932 (our present section 2048), as subdivision 2 (just preceding our present subdivisions 1 and 3 of section 2048, they being subdivisions 3 and 5 of said section 1932), a subdivision reading as follows:

"If it gives a preference dependent upon any condition or contingency. * * * "

In the 1877 Code, what are now sections 2045 and 2048 were adopted, and all references made to preferences in other sections were eliminated from the assignment law. We think it clear why sections 1928-1931 and subdivision 2 of the 1865-66 Code were dropped and our present section 2045 adopted. What is now our section 2039, supra, was a part of our law. Under such section, a debtor might prefer a creditor in any instrument other than in

an assignment for benefit of creditors—in other words, a mere preference was not ordinarily considered fraudulent. Therefore subdivision 2, § 1932, 1865 Code, was not in harmony with the general statute. To harmonize such statutes, the Legislature determined to so provide that a mere preference which did not violate any other provision of section 1932 of the 1865 Code should not render the assignment void at option of a creditor, but should itself be a nullity, and the assignment, if otherwise valid, should be administered in favor of all creditors. That the lawmakers did not intend to limit the effect of the other subdivisions of said section 1932 is conclusively evidenced by the fact that they left them in the law. The change so made was in direct harmony with the current decisions in states having no statutes.

After 1865, just as prior thereto, the courts, whenever they have held assignments void because containing either provision A or B, have placed their holdings upon one or more of the three grounds above referred to, or in case of provision B, upon the additional ground of unlawful reservations, and never, in any case, except in the case of Cissel v. Johnson, 4 App. D. C. 335, have they held such a provision void because creating a preference. Chapters 10 and 11, 5th Ed., of Burrill on Assignments; notes 50 L. R. A. (N. S.), bottom page 716.

It is therefore apparent that in territorial days we adopted, by subdivisions 3, § 1932, supra, what is known as the "majority rule." It is also clear that our legislators soon decided (1877) to put an assignment containing a preference, but which was otherwise valid, on a different plane than one which violated either one of subdivisions 3 to 8 of said section 1932. But it seems most unreasonable to say that, by enacting what is now section 2045, supra, the Legislature intended to take from a creditor the right to treat an asignment void which theretofore was concededly void under subdivisions 3 and 5, § 1932, now subdivisions 1 and 3, § 2048, and require him to either submit to the coercion found in such a provision as the one in the deed before us, or else ask a court to administer the property as a trust.

[7] The deed before us is, upon its face, conclusive evidence of the motive controlling the assignor. He did not desire to bring about a condition whereby one creditor would be preferred to

another—in fact, if any creditor or creditors refused to accept the benefits of the assignment and thus created the claimed preference, the assignor's object would be defeated. The provision for preference, if it is rightly termed such, was merely the means employed to gain the ends desired. These were, first, to coerce the creditors into compromising their claims; failing this, to reserve a benefit to the assignor before all his creditors were paid in full. As was well said in Duggan v. Bliss, 4 Colo. 223, 34 Am. Rep. 80, in considering provision B, the one before us:

"Without expressing any opinion as to the validity of assignments creating preferences merely, it is sufficient to say that the preferences here claimed is incidental to the attempted coercive discharge of the debtor."

Both the ends sought were fraudulent, and, no matter what might be the means employed in an assignment for their accomplishment, their use would render the assignment void as to nonassenting creditors. Certainly, if to use a means, otherwise sanctioned by law, to accomplish a forbidden end would render an act void—then to use, as in this case, a means, a condition of preference, disapproved by law, to accomplish the same forbidden end, must render the act void. Suppose the condition was that no one was to take under the assignment until all had agreed to accept, in full of their claims, any payment they should receive. Here we would have coercion but no preference. Of course it would be void but our colleagues say that, if there is a provision which might prefer some if one or more refuse to be coerced—in other words, if the condition was one of preference as well as of coercion—then the assignment is to be enforced as a trust, regardless of section 2048. Suppose the only provision in an assignment was that no creditor should receive over 50 per cent. of his claim, but there was no provision requiring creditors to receipt in full; such an assignment would be void under subdivision 3, § 2048, and no one would contend that creditors could resort to section 2045. But suppose we put in a preference provision that debts for groceries should be paid 75 per cent.; for money loaned 50 per cent.; all others 25 per cent. Is it possible that because the assignment has an added defect (the preference provision) we must ignore all its other defects and administer the

property as a trust under section 2045, and do this against the very party that has a right to rely on section 2048, and could rely on it if the asignment did not have the added defect? Query: Section 2041, Rev. Code 1919, renders all transfers made with intent to defraud creditors void as against such creditors. If an assignment for benefit of creditors, which was executed with an intent to defraud certain creditors, has in it a clause violating the "preference" provisions of section 2045, must such creditors surrender their rights under section 2041 and ask the court to administer the property as a trust fund?

[8]   It seems to us that the very provisions of section 2045 fully answer our colleagues' contentions. It is only the property transferred by an assignment made "in good faith" (not in violation of section 2041), and *"in conformity with the provisions of this chapter"* (not in violation of section 2048, which is a part of such chapter), which shall, if "it be upon, or contain any * * * condition by which any creditor is to receive a preference or priority over any other creditor," be administered as a trust fund by a court of equity.

We therefore hold that the deed before us is an assignment for benefit of creditors, and that, even if such assignment should be held to be "upon" or to "contain" a "condition by which any creditor is to receive a preference or priority over any other creditor"—a matter at least questionable—yet, being void as to appellant under the provisions of section 2048, it cannot properly be, in effect, held valid as against him by administering it under section 2045.

[9]   Our dissenting colleagues, though agreeing that the decision in the Joas Case was wrong, and though maintaining that, under a proper construction of our statutes pertaining to assignments for benefit of creditors, the property attempted to be conveyed to the assignee should be administered as a trust fund under section 2045, are of the opinion that we should invoke the maxim, "Stare decisis, et non quieta movere," and follow the ruling in the Joas Case. We are unable to concur in that view. The opinion in the Joas Case has never been upheld by this or any other court of last resort; it has been criticized—or excused on ground that some local statute may have sustained it—by such

9—Vol. 43, S. D.

courts as have had occasion to refer to it; it, in effect, reverses an opinion of this court that is concededly correct; that it is erroneous is not even doubtful, but beyond all possible question; it was arrived at without any consideration of either section 2045 or section 2048, Rev. Code 1919. If, under such facts, we should feel bound to invoke the above maxim and, by so doing, establish this erroneous decision as the settled law of this state, it is hard to imagine a case where an appellate court would not be bound to adhere to its former decisions howsoever erroneous they might be.

This maxim has never had a stronger champion than Chancellor Kent; yet, after announcing the principles upon which it is based, he says (Kent's Commentaries, 477) :

"But I wish not to be understood to press too strongly the doctrine of stare decisis, when I recollect that there are more than one thousand cases to be pointed out in the English and American books of reports, which have been overruled, doubted, or limited in their application. It is probable that the records of many of the courts in this country are replete with hasty and crude decisions; and such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error."

It is well said by the author of the notes found in 73 Am. St. Rep. 98-106:

"In general, the maxim stare decisis, as interpreted by our courts, means no more than that those matters which have been properly decided shall not thereafter be differently decided. This statement does not, of course, apply to the myriad matters which, having no important legal principles as their basis, may, with almost equal propriety, be decided one way or the other, the more important consideration being that they shall be governed by fixed and constant rules of law. As to such matters, the literal mandate of the maxim may be carried out with almost theoretical perfection. But it must happen rarely indeed that the maxim will be used to justify the perpetuation of serious legal error. If this were not true, our law would lose its necessary flexibility and a hide-bound system of jurisprudence would be

the result. There would be introduced into it a canon of development commensurate in its absurdity with that ancient maxim of monarchial rule: 'The king can do no wrong;' and the outcome, involving by necessity the sanctification of error and the perpetuation of mischievous mistake, might be serious indeed."

In Paul v. Davis, 100 Ind. 428, it is very pertinently suggested that—

"Consistency purchased by adherence to decisions at the sacrifice of sound principle is dearly bought."

We deem the following from Imperial Sec. Co. v. Morris, 57 Colo. 194, 141 Pac. 1160, peculiarly applicable to the situation confronting us:

"Unless there is some particular reason why an erroneous ruling should be followed, no court should be above reversing itself when it has been clearly demonstrated that it has made a mistake in one of its conclusions, and especially so where the result has been to disregard a legislative enactment, as well as the rules announced in former opinions of this court involving somewhat similar questions; in such case the precedent should not be blindly followed simply because it has been announced."

This court said, in Sioux Remedy Co. v. Cope, 28 S. D. 397, 133 N. W. 683:

"Every court should be free to acknowledge its errors, and should hasten to correct the same, except when under a ruling of the court some rule of property has become long established and fixed, an overturning of which would work great wrong to those who have relied on the law as declared."

Perhaps what we then held should be modified by striking out the word "long" and by adding "or when some rule of practice has become established."

We recognized that this maxim is of limited application in our opinion in the case of State ex rel. Byrne v. Ewert, 36 S. D. 622, 156 N. W. 90. When this court decided the case of Shutz v. Tidrick, 26 S. D. 505, 128 N. W. 811, it might have sustained the lower court and based such a holding on the maxim now under consideration, as there we had a former decision that might well have been held to have established a rule of property and such decision had been followed in a later case, and yet this court did

not hesitate to reverse the trial court, and in so doing, reverse itself.

That no facts exist which should move us to invoke this maxim in the present case seems clear under both reason and authority. 7 R. C. L. 1007, 1008; 15 C. J. 916-918, 953-954, 956, 957; Amer. & Eng. Ency. Law, 183, 184, notes pages 98-106, 73 Am. St. Rep., especially pages 103, 104; Mason v. Nelson Cotton Co., 148 N. C. 492, 62 S. E. 625, 18 L. R. A. (N. S.) 1221, 128 Am. St. Rep. 635; Kimball v. Grantville City, 19 Utah, 368, 57 Pac. 1, 45 L. R. A. 628; notes, Ann. Cas. 1914A, 1081.

If the incorrectness of the decision in the Joas Case was in any respect doubtful; if from the opinion and briefs therein it appeared that section 2048, Rev. Code 1919, had been given consideration; or if such decision had ever been followed by this or any other court; we might feel that the principles governing estoppel—which are universally recognized as those upon which the maxim is based—might require us to follow that erroneous decision. But as stated in 7 C. J. 1008:

"The strong respect for precedent which is ingrained in our legal system is a reasonable respect which balks at the perpetuation of error, and it is the manifest policy of our courts to hold the doctrine of stare decisis subordinate to legal reason and justice, and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error."

We recognize what is said in 7 R. C. L. 1009:

"Where the error of a previous decision is recognized, but the rules therein announced have become rules of property, the question of whether or not the rule of stare decisis shall be adhered to becomes the simple choice between two relative evils. The rule should be adhered to unless it appears that the evils resulting from the principle established must be productive of greater mischief to the community than can possibly ensue from disregarding the previous adjudictions upon the subject."

[10]     What is a "rule of property"? It is a settled legal principle governing the ownership and devolution of property. Yazoo & M. V. R. Co. v. Adams, 81 Miss. 90, 32 South. 937. The decision in the Joas Case does not rise to that dignity; but, if it did, an examination of the authorities cited in support of

the proposition above announced discloses that; under the facts before us, we should not invoke the maxim in this case.

If we should invoke it, we take from appellant and all who in the future may be creditors of one executing such an instrument the right, which the statute gives to them, to treat such a conveyance as void.; we give to assenting creditors, to the exclusion of objecting creditors, the proceeds of all assigned property; we sanction and uphold the action of assignors in coercing their creditors to release and compromise their claims if they will only use this particular method of so doing. On the other hand, if we refuse to invoke this maxim, we uphold the will of our lawmakers and, in so doing, we give notice that statutory rights will be enforced by our courts; that, while we will not prevent assenting creditors from sharing in the proceeds of the assigned property, we will make their rights inferior to the rights of the nonassenting creditor where the assignment violates section 2048; and that we refuse to sanction and uphold clear violations of statutes. We are therefore of the opinion that to refuse to follow the decision in the Joas Case will be productive of less mischief than to perpetuate the errors found therein.

The judgment appealed from is reversed, and the trial court is directed to render judgment in favor of appellant as prayed for in his complaint.

GATES and SMITH, J. J. (dissenting.) We fully agree with that portion of the majority opinion which holds that the instrument in question was in fact an assignment for benefit of creditors, and that decision in the Joas case was wrong. We concede that this court has authority to overturn that decision and to apply the correct principles of law to the instant case, even though the assignor, the assignee, the assenting creditors, and the trial court strictly followed that decision. We are not convinced, however, even under the above concessions, that our oath of office obligates us either legally or morally to join with the majority in declaring that the decision in the Joas case shall not apply to the present case. In 7 R. C. L. 1009, the author says:

"The rule should be adhered to unless it appears that the evil resulting from the principle established must be productive of

greater mischief to the community than can possibly ensue from disregarding the previous adjudications on the subject."

In support of this proposition the author refers to a number of decisions which fully sustain the text. We do not think that the majority have shown that greater evil will ensue by following the erroneous decision than by overturning it. Indeed the only justification attempted to be shown for the repudiation of that decision is the conclusion that it was wrong, and that the present statement of the law is right. In our opinion the evils resulting from adhering to the former decision will be no greater, if as great, than will result from a repudiation of that decision. That decision was handed down in August, 1907. So far as we can discover, it has not been followed by any subsequent decision of this court. It certainly has not been criticized, modified, or overruled by any decision of this court. Certainly it will be more fair to all parties concerned that appellant be compelled to release his claim in full as a condition to his right to share equally with the other creditors (the situation in which appellant would have been had bankruptcy proceedings been instituted) and the transaction be sustained as a deed of trust rather than that appellant receive his claim in full; that other nonassenting creditors be thereby invited to proceed as did appellant; and that the assenting creditors who relied on the Joas decision be relegated to share in what may thereafter remain. So long as the present national bankruptcy law remains in force, occasions for the application of our assignment for benefit of creditors law will be rare. Indeed had it not been for the reliance by the creditors on the Joas decision it can scarcely be doubted that this matter would have been thrown into a court of bankruptcy where all unsecured creditors would have shared equally. In this view the necessity of declaring what is the true meaning of the present instrument becomes of minor importance for the future. It seems to us that the possible, nay probable, results justify us in saying that the correction of the error should be left to the Legislature.

But if that decision is to be overturned, and we are to apply the rules governing assignments for the benefit of creditors to the instant case, yet, in our opinion, the result arrived at by the majority is wrong.

For convenience all statutory references herein are to Rev. Code 1919, except as otherwise indicated. The text of those sections is the same as that of the statutes in force at the time of the execution of the instrument in question. Likewise the word "asignment" as herein used means "assignment for the benefit of creditors." Section 2045 provides (italics are ours):

"An insolvent debtor, may in good faith, execute in an assignment of property, to or more assignees, in trust towards the satisfaction of his creditors, in conformity to the provisions of this chapter, subject, however, to the provisions of this title relative to trusts and to fraudulent transfers, and to the restrictions imposed by law upon assignments by special partnerships, by corporations or by other specified classes of persons; provided, moreover, that *such assignment shall not be valid if it be upon, or conta'n any trust or condition by which any creditor is to receive a preference or priority over any other creditor; but in such case the property of the insolvent shall become a trust fund to be* administered in equity, in the circuit court, and shall inure to the benefit of all the creditors in proportion to their respective claims or demands."

The first question that naturally arises is, Shall the proviso in the above section be given meaning or shall it, by judicial construction, be entirely obliterated? The majority say that the proviso has no application to the present case because they say *this* proviso applies only to assignments made in good faith and in conformity with the provisions of the chapter of which this section is a part. With equal logic they might have said that the clause in that section, "subject, however, to the provisions of this title, relative to * * * fraudulent transfers," has no meaning of which title section 2041 referred to by them is a part, because if a transfer is in fraud of creditors it is not in good faith. We are convinced that the clause "in conformity with the provisions of this chapter" has reference to procedure, because the meaning attempted to be given it by the majority is already expressed in the words "in good faith." Now it is just as much an absence of good faith to give an assignment containing a condition of preference or a condition of priority as it is to give one which violates section 2041 or section 2048.

.  . "A condition in a deed of assignment, requiring the creditors to release the assignor from all claims before receiving any benefit under the deed, the surplus returning to the debtor and not to the nonreleasing creditors, renders the deed fraudulent and void; and such a stipulation, as a condition of preference, although the only effect is to postpone the nonreleasing creditors to a share of the surplus, renders the assignment void." Perry, Trusts (2d Ed.) § 592.

As interpreted by the majority, the proviso is meaningless; it never can apply in any conceivable case. We think that the majority interpretation strains at the letter and ignores the substance. We think that section 2045 means that an assignment, in order to be upheld as an asignment, must be in good faith, but, if it is not in good faith, because of a violation of the proviso, then the property must be administered as a trust in equity for the equal benefit of all creditors.

The next question that arises is, Does the instrument in question contain a condition by which any creditor is to receive a preference over any other creditor? We think that there can be but one answer to this question, to-wit: an affirmative answer. By the terms of the instrument, the nonassenting creditor is absolutely excluded from its benefits. It seems therefore perfectly apparent to us that the instrument contains a condition whereby those creditors who assent are to be preferred over those creditors who do not assent. The majority admit this for the purpose of the opinion but in fact deny it. The validity of an assignment is to be determined by a reading of its terms, not by its ultimate outcome. In Sheldon v. Dodge, 4 Denio (N. Y.) 217, the court said:

"The vice is inherent in the assignment itself, and no future event can make a conveyance valid which contains illegal provisions. "

Plainly this assignment by its very provisions intends and *contemplates* that some creditors may, and others may not, consent to its coercive provisions, and by its very terms the assignment intends and gives a preference, which may extend even to the payment of claims in full, to those creditors who consent, leaving those who refuse no benefit whatever from the assignment. The intent to prefer creditors who accept the conditions offered seems

to us perfectly clear. The creation of a preference on condition of acceptance does not change its character.

The majority further assert that such a condition should not be held to be a condition of preference because of the want of authorities so holding. The reason for the scarcity of authorities is because at common law certain preferences were legitimate and in some of the cases it was sought to sustain a condition similar to the one in question because as a condition of preference it would have been lawful. Such a case was that of Duggan v. Bliss, 4 Colo. 223, 34 Am. Rep. 80, cited by the majority. While that decision is quoted as an authority for the proposition that a coercive condition such as the one in question is not a condition of preference that decision did not so hold. It merely held that, because a preference to be valid at common law must be absolute and unconditional, the condition in question was invalid even if it was a condition of preference. In saying that "the preference here claimed is incidental to the attempted coercive discharge of the debtor" the Colorado court did not hold that there was no condition of preference in the instrument. Even if incidental to the attempted coercive discharge, the stipulation for release was none the less a condition of preference. In Armstrong v. Byrne, 1 Edw. Ch. (N. Y.) 79, it was urged that such a condition was only intended as a mode of creating a preference among creditors, and therefore lawful, but the court said:

"But it is impossible to avoid seeing that a preference among the creditors was not the sole object."

The decision in Grover v. Wakeman, 11 Wend, (N.Y.) 187, 25 Am. Dec. 624, which is probably the leading case in this country upon the subject of assignments for the benefit of creditors, referes to stipulations for release as "conditions of preference," viz.:

"Having thus settled the character and construction of the assignment, the question recurs, whether it is void on account of the condition on which it makes the preference given to the creditors of the second class to depend, to wit, an absolute discharge of their debts."

In an early Iowa decision, Williams v. Gartrell, 4 G. Greene (Iowa) 287, the court was viewing the case from the standpoint

of the statute, which provided that the assent of creditors would not be presumed unless the assignment was unconditional.   The court said:

"If, then, the conditions of the assignment had not been complied with by the creditors—if all had not given a written release of indebtedness, it could not be applied for the benefit of all, and hence it would be partial, if declared valid as to some, and void as to other creditors.   The Code will not justify a construction by which one class of creditors would be preferred over another, nor will it justify a partial and conditional assignment."

The court thus plainly declared that the effect of the assignment was to prefer the assenting creditors over those not assenting.   In Hurd v. Silsby, 10 N. H. 108, 34 Am. Dec. 142, although the word "preference" was not used, the court plainly held that a condition exacting a release amounted to a condition of preference in violation of the statute, which required assignments to be for the benefit of all creditors in proportion to their demands.   In Bump, Fraud. Conv. 431, such a condition is spoken of as a condition of preference, likewise in 2 R. C. L. 671, § 29, and in Perry on Trusts (6th Ed.) § 592, quoted supra.   Burrill on Assignments (5th Ed.) § 178, says:

"Again preferences may be given either absolutely as by directing certain named creditors to be first paid , at all events; or upon condition as by preferring such creditors as shall comply with certain requisitions named in the assignment."

See, also, Burrill, §§ 163, 193, 195.   In Cissell v. Johnston, 4 App. D. C. 335, the court said:

"Looking at our statute in this light, we are of the opinion that the attempt, if such in fact it were, to limit the benefit of the trust to such creditors only as shall release their demands if not paid in full, is a preference within the meaning of the words, 'Every provision in any assignment hereafter made in the District of Columbia providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of the assignment shall be paid pro rata from the assets thereof."

We are convinced, therefore, not only from the plain language of the statute but from the authorities cited, that a stipula-

tion for release is also a condition of preference within the meaning of the proviso of section 2045.

The next question that arises, is, Does the instrument in question contain a condition by which any creditor is to receive a priority over any other creditor? We likewise think that an affirmative answer is the only possible answer to this question. The effect of the clause reserving to the assignor that which may remain after assenting creditors have been paid (prohibited by subdivision 3 § 2048) is to hinder and delay the nonassenting creditor. 4 Corp. Jur. 1147. It defers the right of the nonassenting creditor to make his collection until the surplus is again in the hands of the assignor. It therefore plainly contemplates a priority to the assenting creditor over the nonassenting creditor, and as such is in violation of the proviso of section 2045.

The next question that arises is, Should plaintiff be permitted to recover the full amount of his claim under section 2048, or should he only be permitted to share ratably with the other creditors under the provisions of section 2045? We do not categorically answer this question, as we did the foregoing questions. We concede that here there is ground for difference of opinion. Where, as here, there are apparently two inconsistent remedies, the selection of the remedy is fraught with difficulty. The majority would ignore the proviso in section 2045, and would grant appellant full relief under section 2048. It seems to us that the legislative intent as disclosed by the history of these sections indicates that section 2045 should be applied to all cases where it is applicable and where there is a conflict between the two sections the application of section 2048 should be limited to those cases where section 2045 is not applicable. In that way the conflicting sections can be reconciled. Prior to the Revision of 1877 present section 2045 did not contain the proviso; certain preferences were permitted (section 1928 C. C., 1865-66) and present section 2048 (section 1932, C. C., 1865-66) was as follows, so far as here material:

Sec. 1932. An assignment for the benefit of creditors is void against any creditor of the assignor not assenting thereto, in the following cases:

"1. If it gives an unlawful preference of one debt or class of debts over another.

"2. If it gives a preference dependent upon any condition or contingency, or with any portion of revocation reserved:

"3. If it tends to coerce any creditor to release or compromise his demand; * * *

"5. If it reserves any interest in the assigned property, or in any part thereof, to the assignor or for his benefit, before all his existing debts are paid."

In the Revision of 1877 subdivisions 1 and 2 were eliminated; preferences were done away with, and the proviso to present section 2045 was added. At common law certain preferences were permitted, but by the weight of authority stipulations for release or reservation were unlawful. Grover v. Wakeman, supra. These principles were embodied in our Civil Code 1865-66, as taken from the proposed N. Y. Field Code. While the practice of inserting stipulations for release or for reservations was condemned, it was not condemned because of their operation as a preference but because the effect was to permit the assignor to enact his own insolvency law. The purpose of the Revision of 1877 was manifestly to do away with preferences in line with the trend of statutes theretofore enacted in other states. 3 Ency. of Law (2 Ed.) 73. Now when the Legislature of 1877 abolished all preferences in assignments and declared that when an assignment did contain a condition of preference or priority, the remedy should be the ratable division of the property among all creditors, we do not think that by re-enacting the clauses which are at present clauses 1 and 3 of section 2048 it intended that creditors against whom there was a preference or priority should thereby obtain their claims in full at the expense of other creditors. It is incongruous to suppose that in the same breath the Legislature intended an equal division and an unequal division. Ever since the Revision of 1877, the remedy in such case, in our opinion, has not been to the individual, but for the equal benefit of all creditors ratably. If such a remedy is applied, appellant will recover ratably with other creditors, and will not lose his right to recover any residue of his claim from after-acquired property of the insolvent. Straw v. Jenks, 6 Dak. 414, 43 N. W. 941.

The legislation on this subject in the Revision of 1877 and as continued to date seems to be unique. We have been unable to

discover that any other jurisdiction in abolishing preferences in an assignment has apparently continued a separate remedy for a viola tion of provisions against stipulations for release or reservation. We recognize that cases may arise which may cause peculiar results as illustrated by the majority.

Considering the rule that statutes in pari materia are to be construed together. Black Interp. Laws, 204, and that neither is to be eliminated (which must happen under the majority view) we are convinced of the unsoundness of the portion of the majority opinion dealing with the matter now under consideration. The majority pervert our position by saying in the opinion:

"It cannot properly be in effect held valid as against him by administering it under section 2045."

The proviso in section 2045 does not in effect declare the assignment to be valid. It declares precisely the contrary, but it provides a different remedy than is apparently provided by section 2048.

The majority contend that under section 2048 appellant is entitled to recover his claim in full, and thereby receive a preference and priority over the assenting creditors because the letter of that section declared the assignment to be void only as against nonassenting creditors. Does such result necessarily follow? Does that section, standing alone, mean any more than that the assenting creditors are estopped from questioning the validity of the assignment upon any of the grounds specified in that section? Then construing that section with section 2045 as statutes in pari materia, can it be said in a case where clauses of an assignment are offensive, both as conditions of preference and priority on the one hand and as conditions of coercion and reservation on the other hand, that the Legislature intended the attacking nonassenting creditors should have the right to exhaust the estate as against the assenting creditors merely because they had submitted to the coercion or reservation? We think not.

We think that we have clearly demonstrated that the present assignment contains provisions which violate both sections 2045 and 2048. Assuming, then, that both sections became operative the moment the assignment was executed, by section 2045 the property of the assignor immediately became a trust fund in the hands of the assignee for the benefit of all creditors of the assignor. In such

case, may any creditor thereafter invoke section 2048, alleging that the assignment contains provisions which tend to coerce creditors, or wrongfully reserves to the assignor an interest in the property, and thereby acquire a superior right to take so much of the trust fund as may satisfy his own claim in full, and deprive all other creditors of their right to have the fund distributed in proportion to their respective claims or demands?

We do not think this court should be driven to any such conclusion, unless it is imperatively demanded by the terms of the statute itself. It seems to us that interpreting the provisions of this assignment, together with the sections of the Code applicable thereto, the right of all the creditors, to an equal distribution of the trust fund should be given preference over the right of any single creditor.

To summarize: (1) We think the decision in Joas v. Jordan, supra, though wrong, should be followed as the lesser of two evils, and therefore that the judgment appealed from should be affirmed; (2) if that decision be not followed, then that appellant be remanded to his remedy under section 2045, and that the judgment should be affirmed without prejudice to his right to so proceed.