ANDERSON, Special Adm. Estate of Denise Anderson,
Respondent v. LALE, Appellant

(216 N.W.2d 152)

(File No. 11002. Opinion filed March 19, 1974)

Morman & Smit, Sturgis, for plaintiff and respondent.

Costello, Porter, Hill, Banks & Nelson, Rapid City, for defendant and appellant.

DOYLE, Justice.

This is an action for wrongful death pursuant to SDCL 21-5. The decedent was a seven-year-old girl who was fatally injured in an automobile-pedestrian accident in Butte County, South Dakota, on September 16, 1969. The action was brought by her father, Darrell C. Anderson, as special administrator of her estate. Prior to trial, the defendant moved for a change of venue on the ground that an impartial trial could not be had in Butte County. The defendant contended that the acquittal by a jury in November of 1969 of the second degree manslaughter charges, which had been brought against him in regard to the same accident herein involved, had caused adverse and hostile reactions of the people of the community. These reactions, he alleged, made it impossible to obtain a fair and impartial trial. The motion was denied.

Before the jury was empaneled, the defendant moved to have those prospective jurors, who had heard a similar wrongful-death action in November 1970, disqualified on the ground that their prior exposure to the law in this area may have a prejudicial effect upon the present case. This motion was also denied.

The defendant admitted liability and the issue of damages alone was tried to the jury. A verdict was returned in favor of the

plaintiff in the sum of $16,500. The defendant made a motion for a new trial upon the ground that the trial court erred in its instructions to the jury concerning the elements of damage they were to consider and, therefore, the verdict reached was excessive. This motion was also denied and the defendant appeals.

■ The first issue considered involves the motion for a change of venue. Both parties presented affidavits and other evidence to the judge supporting their respective positions in regard to the question of whether the defendant could obtain a fair and impartial trial.

SDCL 15-5-11, in applicable part, provides that:

"The court may change the place of trial   *   *   *:

*       *       *       *       *       *

(2) Where there is reason to believe that an impartial trial cannot be had therein   *   *   *."

It is, therefore, discretionary on the part of the trial judge whether the circumstances warrant a change of venue. In the absence of clear abuse of its discretion, this court will not interfere with a trial court's exercise thereof. Root v. Bingham, 1910, 26 S.D. 118, 128 N.W. 132. The civil case was brought to trial over a year after the appellant had been acquitted on the criminal charges. It was the trial judge's opinion that this passage of time was sufficient to dim the memories of the prospective jurors. An examination of the record discloses nothing to indicate any abuse of discretion in this regard and we accordingly uphold the order denying the motion for change of venue.

■ The question involving the jury panel also involves the discretion of the trial judge. The *voir dire* examination of the jury panel as it appears in the record discloses that the participation of certain jurors in a former wrongful death case would not affect their decision in the present one. Again we find no abuse of discretion and uphold the denial of the motion to disqualify certain jurors.

The final issue considered involves whether the trial court erred in giving what is in substance South Dakota Pattern Jury Instruction, Civil, 31.02 as its Instruction No. 6. The questioned portion of that instruction is as follows:

"You may also consider what pecuniary loss, if any, plaintiffs have suffered and will suffer in the future with reasonable certainty, by being deprived of advice, assistance, comfort; and protection of the child."

It is the defendant's contention that in a wrongful death action in South Dakota there is no right to recover for the loss of companionship and association of the decedent and, therefore, the trial court erred in utilizing the above language in its instructions.

SDCL 21-5-7 provides:

*"Damages proportionate to pecuniary injury to beneficiaries.* —In every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought."

Tracing the history of this statute we see that it had its genesis in § 677, 1877 Code of Civil Procedure, wherein a version of the Lord Campbell Act was adopted which allowed a claim for punitive damages for wrongful death. This statute was amended in 1887 by Chap. 33, § 5499, Comp.Laws by the striking of the word "punitive". We first construed the statute in Belding v. Black Hills & Ft. P. R. Co., 1892, 3 S.D. 369, 53 N.W. 750, holding that the statute gave the beneficiaries the right to recover "the damages resulting to them from the loss of the life of the deceased." Following this interpretation, it was held in Smith v. Chicago, Mil. & St. P. Ry. Co., 1895, 6 S.D. 583, 62 N.W. 967, that the measure of damages recoverable was only the probable "pecuniary loss" suffered by the beneficiaries. In 1909 the legislature codified the term "pecuniary injury". Ch. 301, S.L.1909. The 1909 law was then carried forward in Rev.Code of 1919, § 2931 and SDC 37.2203 verbatim. In two

wrongful death cases brought before the court during this period, the court ruled first in Rowe v. Richards, 1913, 32 S.D. 66, 142 N.W. 664, that recovery in a death action "is limited to loss of means of support, loss of society, comfort, and care suffered by the plaintiff in the death of the decedent." However, in Smith v. Presentation Academy of Aberdeen, 1933, 61 S.D. 323, 248 N.W. 762, the court stated that:

> "the measure of damage is the reasonable expectation of pecuniary advantage to those entitled to recover. This statute does not authorize recovery for loss of society or grief and anguish caused by the death, nor for the pain and suffering of the decedent prior to death."

This latter position was adopted by the court in Tufty v. Sioux Transit Co., 1943, 69 S.D. 368, 10 N.W.2d 767; Hodkinson v. Parker, 1944, 70 S.D. 272, 16 N.W.2d 924, and McCleod v. Tri-State Milling Co., 1946, 71 S.D. 362, 24 N.W.2d 485, where this court held in all three cases that the amount of recovery must be based upon expenses necessarily incurred and a reasonable expectation of benefits which would have resulted from the continued life of the deceased.

In 1947 the wrongful death statute was again amended removing the word "pecuniary" and inserting the word "all" in its place, Ch. 173, § 1, S.L.1947, thus enlarging the measure of damages which could be recovered. Under this language, the court in Simons v. Kidd, 1950, 73 S.D. 306, 42 N.W.2d 307, found that:

> "The mental anguish and the loss of companionship susceptible of monetary valuation were * * * proper elements to be considered in estimating the damages sustained by the parents."

See also, Western Surety Co. v. Addy, 1950, 73 S.D. 322, 42 N.W.2d 660.

In Lanning v. Schulte, 1967, 82 S.D. 528, 149 N.W.2d 765, decided under the 1947 law, this court in reversing an order denying a new trial, stated:

"An award of slightly more than $500 to compensate for future pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship and deprivation of society and love, in our opinion, is so shockingly low that it cannot be permitted to stand."

The 1967 legislature enacted the present statute changing the term "all injury" back to "pecuniary injury". SDCL 21-5-7.
(There were other prior amendments, but all related to monetary increases on the limit of recovery.)

■ It is the contention of the defendant that it was the intention of the legislature in making the 1967 changes to return to the more restrictive measure of damages in wrongful death actions of prior times. We believe that the wrongful death statute is remedial in character and, therefore, should be construed liberally in light of current social conditions. We, therefore, do not feel constrained to follow our past decisions.

In cases involving this problem from other jurisdictions we note the landmark case of Wycko v. Gnodtke, 1960, 361 Mich. 331, 105 N.W.2d 118. In Wycko v. Gnodtke, supra, the Michigan court rejected the child-labor or economic-value measure of pecuniary loss suffered through the death of a minor child, stating:

"The pecuniary value of a human life is a compound of many elements. The use of material analogies may be helpful and inoffensive. Just as with respect to a manufacturing plant, or industrial machine, value involves the costs of acquisition emplacement, upkeep, maintenance service, repair, and renovation, so, in our context, we must consider the expenses of birth, of food, of clothing, of medicines, of instruction, of nurture and of shelter. Moreover, just as an item of machinery forming part of a functioning industrial plant has a value over and above that of a similar item in a showroom, awaiting purchase, so an individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society

and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the 'value' of the life we seek to ascertain. We are, it will be noted, restricting the losses, to pecuniary losses, the actual money value of the life of the child, not the sorrow and anguish caused by its death. This is not because these are not suffered and not because they are unreal. The genius of the common law is capable, were it left alone, of ascertaining such damages, but the legislative act creating the remedy forbids. Food, shelter, clothing, and companionship, however, are obtainable on the open market, have an ascertainable money value. Finally if, in some unusual situation, there is in truth, or reasonably forthcoming, a wage-profit capability in the infant (an expectation of an excess of wages over keep, the measure heretofore employed) the loss of such expectation should not be disregarded as one of the pecuniary losses suffered. In such case, however, the assessment is made as a matter of fact and not of fiction. It is true, of course, that there will be uncertainties in all of these proofs, due to the nature of the case, but we are constrained to observe that it is not the privilege of him whose wrongful act caused the loss to hide behind the uncertainties inherent in the very situation his wrong has created."

Wycko v. Gnodtke, supra, was purportedly overruled by Breckon v. Franklin Fuel Company, 1970, 383 Mich. 251, 174 N.W.2d 836. However, the later case of Smith v. City of Detroit, 1972, 388 Mich. 637, 202 N.W.2d 300, stated that the Breckon court was incorrect in its interpretation of Wycko and held the "loss of companionship is an element of pecuniary damages under [their] wrongful death act   *   *   *."

The Minnesota Supreme Court, recognizing its pecuniary-loss measure of damages was antiquated when applied to present-day needs and experience, stated in Fussner v. Andert, 1962, 261 Minn. 347, 113 N.W.2d 355, that:

"We agree with the plaintiff that the strict pecuniary-loss measure of damages, which limits recovery to

the parent for the loss of earnings, contributions, and services in terms of dollars which the survivor might have expected to receive during the lifetime of the child, is unduly restrictive and its meaning should be expanded to conform to present-day needs and experience. As applied to a child, the narrow pecuniary-loss test, which excludes loss of aid, comfort, and society, may have met the needs of the community in the last century when our society was largely rural and a child might be considered an economic asset. The changes which have occurred in the social and economic life of the community since the test was first adopted require a reappraisal of its meaning and application. We must view the death-by-wrongful-act statute in the light of present-day conditions. It must be conceded that the majority of today's children render far less service to their parents than did children in the last century when the test was formulated. Because of child-labor laws and the great increase in school and college attendance, fewer children work outside the home. It should be agreed that generally the child's earnings may go no further than to supplement the parent's considerable financial outlay in educating and rearing him to say as a general rule that a parent sustains a financial loss from the death of a minor child is not realistic. When the cost to the parent of raising and educating the child is considered, it is apparent that the strict adherence to the pecuniary-loss test would in many instances prevent any recovery whatever. Probable cost of raising him to maturity and educating him would be far greater than the provable value of his services. We cannot agree that loss of earnings, contributions, and services in terms of dollars represents the only real loss the parent sustains by the death of his child. With the passage of time the significance of money loss has been diminished. Conversely, there is a growing appreciation of the true value to the parent of the rewards which flow from the family relationship and are manifested in acts of material aid, comfort, and assistance which were once considered to be only of sentimental character."

Washington also modernized its measure of damages in wrongful death actions wherein the decedent was a child. In Lockhart v. Besel, 1967, 71 Wash.2d 112, 426 P.2d 605, the court said:

"economic conditions and our way of life have so significantly changed that to say the pecuniary value of the loss of a minor child's services over and above his cost of support and maintenance, except in rare cases, is not a pure fiction can no longer be ignored. We must now conclude that to award more than nominal damages in every case where we limit damages to the loss of a minor child's earnings above the cost of his support and maintenance, is an affront to reason and logic.

\* \* \* \* \* \*

"We hold that the measure of damages \* \* \* should be extended to include the loss of companionship of a minor child during his minority without giving any consideration for grief, mental anguish or suffering of the parents by reason of such child's wrongful death."*

Recently, Iowa held in Wardlow v. City of Keokuk, 1971, Iowa, 190 N.W.2d 439, that:

"where an action is prosecuted \* \* \* for the wrongful death of a minor \* \* \* loss of companionship and society of the minor during his minority is a proper element to be considered by the trier of fact in fixing the amount awarded for 'loss of services' without giving any consideration for grief, mental anguish or suffering of the parents by reason of such child's wrongful death."

Nebraska has similarly broadened its concept of the measure and elements of damages in cases such as this. In doing so, the court in Selders v. Armentrout, 1973, 190 Neb. 275, 207 N.W.2d 686, stated:

---

* The above three cases, Wycko, Fussner and Lockhart, are cited as authority for South Dakota Pattern Jury Instruction, Civil, 31.02.

"Modern economic reality emphasizes the gulf between the old concepts of a child's economic value and the new facts of modern family life. To limit damages for the death of a child to the monetary value of the services which the next of kin could reasonably have expected to receive during his minority less the reasonable expense of maintaining and educating him stamps almost all modern children as worthless in the eyes of the law. In fact, if the rule was literally followed, the average child would have a negative worth."

■ We, too, feel as the courts did in the above cited cases, that the better rule is to include loss of companionship, society, advice, assistance and protection as elements of damages in wrongful death cases wherein the decedent was a minor. It is evident that any court where more than nominal damages have been awarded must have tacitly accepted this rule in that, except in rare cases, never would a child's earnings be more than his cost of upbringing.

■ We are also of the opinion that the 1967 legislature was well aware of the newer interpretations of pecuniary loss of injury, and it was their intent to only eliminate any recovery for sorrow, mental distress and grief suffered by the parents or any pain or suffering on the part of the decedent. Comment: South Dakota Pattern Jury Instruction, Civil, 31.03.

In reaching this decision we are not unmindful of the proposition pointed out in Wardlow v. City of Keokuk, supra, that where a statute has received a judicial construction and is substantially reenacted, such construction may be regarded as having been adopted by the legislature. However forceful this presumption may be, it is not without qualification or exception. As stated in Stormo v. City of Dell Rapids, 1955, 75 S.D. 582, 70 N.W.2d 831:

"the presumption is but an aid in ascertaining the legislative intent and is not conclusive."

Also in Reynolds v. Continental Mortgage Co., 1962, 85 Idaho 172, 377 P.2d 134, the court said:

"such rule is not absolute and does not debar the courts from reexamining their own previously accepted doctrines or from modifying or overruling their former decisions. Scott v. Gossett, 66 Idaho 329, 158 P.2d 804; Jewett v. Williams, 84 Idaho 93, 369 P.2d 590; In re Elliott's Estate, 22 Wash.2d 334, 156 P.2d 427, 157 A.L.R. 1335; 82 C.J.S. Statutes § 370, p. 853; 50 Am. Jur. Statutes § 443, p. 462."

We are also well aware of the doctrine of *stare decisis*. However, we note Chancellor Kent's language in this regard when he stated in his Commentaries of 1884:

"But I wish not to be understood to press too strongly the doctrine of *stare decisis*, when I recollect that there are more than one thousand cases to be pointed out in the English and American books of reports, which have been overruled, doubted, or limited in their application. It is probable that the records of many of the courts in this country are replete with hasty and crude decisions; and such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." Kent's Commentaries, Vol. 1, 13th Ed., p. 477.

We have in our past decisions adopted his viewpoint. Brekke v. Crew, 1920, 43 S.D. 106, 178 N.W. 146 (quotes the above language from Kent's Commentaries); LaFleur v. Kolda, 1946, 71 S.D. 162, 22 N.W.2d 741.

As succinctly stated in Paul v. Davis, 1884, 100 Ind. 422:

"Consistency purchased by adherence to decisions at the sacrifice of sound principle is dearly bought."

We, therefore, hold that in a wrongful death action, wherein the decedent was a minor, it is proper for the court to instruct the jury that loss of companionship and society, which may be expressed by, but is not limited to, the words "advice",

"assistance" and "protection" are proper elements of damage for them to consider in reaching their verdict. We note that the word "comfort" was used in the instruction given in this case. Comfort may connote alleviation of mental distress and we, therefore, find it objectionable since if an award for mental distress of the parents is not permitted confusion may arise. It is, however, only harmless error.

In addition to South Dakota Pattern Jury Instruction, Civil, 31.02, the court gave the following instruction:

> "You are instructed that in your assessment of Plaintiff's damages, the law of this State does not permit you, and you must not, award plaintiffs any sum for the sorrow, mental distress and grief or loss of the comfort, society, protection and companionship which they may have suffered by reason of the death of Denise Anderson.

> "Further you must not consider, in arriving at an award, any suffering which the decedent, Denise Anderson, may have experienced, if any, before her death, nor any pecuniary loss that said decedent may have personally suffered."

This instruction is the same as South Dakota Pattern Jury Instruction, Civil, 31.03, except that the court added:

> "or loss of the comfort, society, ·protection and companionship * * *."

We expressly disapprove of this addition to the instruction in view of this opinion.

We do not believe that our decision will result in demanding too much of a jury to place a dollar value on · loss of companionship and society. In Hoekstra v. Helgeland, 1959, 78 S.D. 82, 98 N.W.2d 669, we said:

> "Juries are being asked daily to place values for similar damages in alienation of affection actions, on pain and suffering, to balance slight against gross negli-

gence and mitigate damages accordingly in personal injury actions, on malice in actions where exemplary damages are allowable and in other cases which are as difficult as the case before us, so this should not be set up as a bar or argument against such recovery."

We further believe that our decision will not cause excessive verdicts.

"it must be recognized that the type of action is such that the trial court should exert its influence to restrain those excesses into which juries are apt to run. Unless such influence is exerted, sympathy and sentiment will supplant the exercise of an honest and impartial judgment in reaching a verdict limited to the pecuniary injury resulting from the death." Tufty v. Sioux Transit Co., 1943, 69 S.D. 368, 10 N.W.2d 767.

The defendant contends that the jury's verdict of $16,500 was excessive and requested a new trial. It is the general rule that an application for a new trial upon the ground of the insufficiency of the evidence to support the verdict is addressed to the sound discretion of the trial judge, and his discretion will only be reviewed by this court in case of manifest abuse of that discretion. Shann v. Disbrow and Co., 1936, 64 S.D. 528, 268 N.W. 700.

"Our decisions are to the effect that the verdict of the jury will not be set aside except in extreme cases as where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law by which damages in the particular case were to be measured." Simons v. Kidd, 1950, 73 S.D. 306, 42 N.W.2d 307.

The record in this case shows that the decedent was seven years of age and a bright, affectionate, kindly child who did well in school and church activities. She was an energetic, active, obedient, helpful child and an integral part of a close-knit family. Upon this record and in view of our decision we find that the verdict was not excessive.

Affirmed.

WINANS, J., concurs.

BIEGELMEIER, C. J., concurs in result.

WOLLMAN and DUNN, JJ., dissent.

BIEGELMEIER, Chief Justice (concurring in result).

While I am in accord with some of the opinion, I cannot agree with all the quotations from the cases cited nor with some of the statements of law and dictum therein.

During the consideration of this appeal it appeared there was, and now remains, a difference of opinion among the members of the court as to the propriety of part of Instruction No. 6. Although pertinent provisions of Instructions 6 and 8, which are hereby referred to, are quoted in different parts of Justice Doyle's opinion, I believe it well to again set out portions of Instruction 6 and, as I read its grammar, Instruction 8 as follows:

6. "You may also consider what *pecuniary* loss, if any, plaintiffs have suffered and will suffer in the future with reasonable certainty, by being deprived of *advice, assistance, comfort* and *protection* of the child." (emphasis supplied)

8. "You are instructed that in your assessment of Plaintiff's damages, the law of this State does *not* permit you, and you must *not*, award plaintiffs any sum for the * * * loss of the *comfort, society, protection* and *companionship* which they may have suffered by reason of the death of Denise Anderson." (emphasis supplied)

Defendant's objection was to the use of the words "advice", "protection" and "comfort" in Instruction No. 6 while in Instruction No. 8 the court advised the jury that no recovery could be allowed for "loss of the comfort" and "protection" used in Instruction 6 (as well as "society" and "companionship" not appearing therein). Defendant did not object to the apparent contradictions of Instructions 6 and 8 (although plaintiff did so).

In this state of the record defendant had a favorable instruction that advised the jury not to consider loss of comfort, society, protection and companionship in any award of damages, and it tempered, if it did not eliminate, the items complained of in Instruction 6. The only question remaining is whether the award was excessive. I conclude it was not. Advice and assistance may have pecuniary value, but I do not reach that under this record. That children may be liable for the support of their parents, SDCL 25-7-28 through 25-7-30, gives a basis to the use of the word "assistance", and it may be said that such assistance and aid by children in later years has been and may in the future be of value. Experience has shown this to be true in some instances.

Our opinions in Rowe v. Richards, 32 S.D. 66, 142 N.W. 664, 57 L.R.A. 1915E 1069, and 35 S.D. 201, 151 N.W. 1001, 57 L.R.A. 1915E 1075, Ann.Cas.1918A, 294, contain the reasoning and observations of our court on this subject which is also discussed in the recent opinion of the United States Supreme Court in Sea-Land Services, Inc. v. Gaudet, Administratrix (1974), 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9.

For the above reasons I concur in the result.

WOLLMAN, Justice (dissenting).

There is no question but that under the pre-1947 amendment to our wrongful death statute there could be no recovery for loss of companionship, society, association and advice, nor for the elements encompassed within those terms. See, e. g., Smith v. Presentation Academy of Aberdeen, 61 S.D. 323, 248 N.W. 762; Tufty v. Sioux Transit Co., 69 S.D. 368, 10 N.W.2d 767; Hodkinson v. Parker, 70 S.D. 272, 16 N.W.2d 924; Comment, South Dakota Pattern Jury Instruction No. 31.02.

We must assume that the legislature was familiar with this court's interpretation of the pre-1947 law when it reenacted the exact wording of the pre-1947 law in 1967 and that the legislature intended to adopt that interpretation along with the exact wording of the old statute. Proper judicial deference to legislative intent requires us to follow our interpretation of the

pre-1947 law, however appealing it might be to fulfill the wishful thinking of the drafters of Pattern Jury Instruction No. 31.02. See the dissenting opinions in Wardlow v. City of Keokuk, Iowa, 190 N.W.2d 439, and Selders v. Armentrout, 190 Neb. 275, 207 N.W.2d 686.

I would reverse the judgment.

I am authorized to state that Justice Dunn joins in this dissent.