**Arvid HALVORSEN, Special Administrator of the Estate of Bjorgulv Underdal, Deceased, Appellee,**

v.

**Dennis D. DUNLAP and Frank Parker, d/b/a Marv's Conoco, and Continental Oil Company, Appellants.**

No. 73–1123.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1973.

Decided * April 29, 1974.

---

* During oral argument of this cause, counsel advised us that the case of Anderson v. Lale, S.D., 216 N.W.2d 152, dealing with an issue material to the cause before us, was then pending before the South Dakota Supreme Court. We therefore deferred ruling herein pending the outcome of that decision. The *Anderson* case was handed down March 19, 1974, and is discussed *infra*.

Ronald Clabaugh, Bangs, McCullen, Butler, Foye and Simmons, Rapid City, S. D., for appellants.

Kelton S. Lynn, Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, S. D., for appellee.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

The principal issue on this appeal involves an interpretation of the term "pecuniary injury" in the South Dakota wrongful death statute. South Dakota Comp.Laws Ann. § 21–5–7 (1969).[1]

This diversity wrongful death action was instituted in the United States District Court for the District of South Dakota by Arvid Halvorsen, Special Administrator of the estate of Bjourgulv Underdal, for the benefit of Olav and

---

1. § 21–5–7. Damages proportionate to pecuniary injury to beneficiaries.—In every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought.

Kristie Underdal, the surviving parents of the deceased. Halvorsen sought damages resulting from an automobile accident on January 11, 1972, when a wrecking truck operated by defendant appellant Dunlap, while in the scope of his employment for and on behalf of defendant appellant Parker, d/b/a Marv's Conoco, collided with an automobile in which the deceased was a passenger. At the time of the accident, the decedent was 27 years old and a student of the South Dakota School of Mines. The action was originally brought against Dunlap Parker and Continental Oil Company. However, the trial court entered summary judgment in favor of defendant Continental Oil.

At the trial, both Dunlap and Parker admitted liability, and a jury verdict in the amount of $35,000 was returned on the issue of damages. Judgment thereupon was entered November 6, 1972. Appellants primarily urge that the trial court erred in instructing the jury that, in. determining the extent of the parents' pecuniary loss, they could consider the deprivation of the child's "advice, comfort, assistance and protection * * *." It is argued that these are not proper elements under the South Dakota statute which limits a wrongful death recovery to an amount proportionate to the "pecuniary injury" suffered by the beneficiaries as a result of the death. S.D.C.L.Ann. § 21–5–7 (1969). Appellants also contend that testimony of decedent's plans to construct tourist cabins on his parents' land as evidence of pecuniary loss was speculative and conjectural and therefore improperly admitted into evidence; that damages awarded for pecuniary loss must be reduced to present value; and that damages awarded by the jury were excessive.

The South Dakota wrongful death statute was originally enacted in 1909 and provided that the beneficiaries could recover an amount proportionate to their "pecuniary injury" resulting from the decedent's death. Early decisions evinced an intention by the South Dakota Supreme Court that this statute should be construed liberally. In Whaley v. Vidal, 27 S.D. 627, 132 N.W. 242, 248 (1911), it was held that the decedent's care and influence, as well as his intellectual and moral instruction, can be compensable losses. "Pecuniary injury" was also held to include the "loss of society, comfort, and care suffered by the plaintiff in the death of the decedent." Rowe v. Richards, 32 S.D. 66, 142 N.W. 664, 666 (1913).

Decisions of the South Dakota Supreme Court subsequent to the *Whaley* and *Rowe* cases interpreted the 1909 enactment more narrowly. In Tufty v. Sioux Transit Co., 69 S.D. 368, 10 N.W. 2d 767, 769 (1943), it was stated that there could be no allowance for loss of society or companionship of a deceased child. Similarly, in Hodkinson v. Parker, 70 S.D. 272, 16 N.W.2d 924 (1944), the court found reversible error where the trial judge had instructed the jury that they could consider the loss of decedent's "future advice" as a compensable pecuniary injury. *Accord*, McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485 (1946).

In 1947, the South Dakota legislature amended the wrongful death statute by deleting the word "pecuniary" and allowing the beneficiaries to recover for "all injury" resulting from the decedent's death. The amended statute thus accorded the beneficiaries a greater measure of damages. They received compensation ˅not only for loss of support, society and companionship, but also for mental anguish and bereavement. Lanning v. Schulte, 82 S.D. 528, 149 N.W.2d 765 (1967); Simons v. Kidd, 73 S.D. 306, 42 N.W.2d 307 (1950).

The wrongful death statute was amended to its present form in 1967 when the South Dakota legislature reinstated the "pecuniary injury" measure of damages.[2]

2. *Id.*

The main thrust of appellants' argument is that the interpretation of the present statute must be governed by the judicial interpretation of the pre-1947 statute which did not permit compensation for loss of "advice, comfort, assistance and protection." We disagree. Based upon the recent judicial interpretation of the South Dakota statute [3] and similar statutes from neighboring jurisdictions as well, we conclude that the trial judge did not commit error by instructing the jury to consider these matters.

The phrase "pecuniary injury", in its common and acceptable interpretation, imports a financial or monetary loss. While it is clear that sorrow or mental suffering are not "pecuniary" in nature, there has been substantial controversy concerning whether loss of society, comfort and companionship should be compensable under this standard.[4] California has long recognized that "pecuniary" loss necessarily includes deprivation of the decedent's "comfort, society and protection." Holder v. Key System, 88 Cal. App.2d 925, 200 P.2d 98 (1948); Zeller v. Reid, 38 Cal.App.2d 622, 101 P.2d 730 (1940). The liberal California rule did not attain any degree of acceptance until Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118 (1960), set forth the policy reasons for adopting such a rule, and thus initiated the modern trend of granting a more expansive interpretation to the phrase "pecuniary" injury. In *Wycko*, the Michigan Supreme Court abrogated the "child-labor" measure of pecuniary loss which allowed parental recovery for an amount equal to the child's earning during minority less the cost of rearing that child. It held that the parents could be compensated for their loss of the child's "mutual society and protection" and "companionship." [5] A number of jurisdictions have adopted the *Wycko* principles and have broadened their interpretation of "pecuniary" injury to include the loss of the society, comfort and companionship of a deceased minor child. Wardlow v. City of Keokuk, 190 N.W.2d 439 (Iowa 1971); Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355 (1961) (loss of advice, comfort, assistance and protection of child); Selders v. Armentrout, 190 Neb. 275, 207 N.W.2d 686 (1973); Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605 (1967). In logical recognition of the

---

3. In Anderson v. Lale, *supra*, 216 N.W.2d 152 (S.D. filed March 19, 1974), a divided court (per Doyle, J., one J. concurring, one J. concurring in result only, two JJ. dissenting) held "that in a wrongful death action wherein, the decedent was a minor, it is proper for the court to instruct the jury that loss of companionship and society, which may be expressed by, but is not limited to, the words 'advice', 'assistance' and 'protection' are proper elements of damage for them to consider in reaching their verdict."

The court noted, however, that the word "comfort", used in the challenged instruction in the *Anderson* case (and herein) "may connote alleviation of mental distress." The South Dakota court therefore found the use of the word "comfort" objectionable for the reason that "since if an award for mental distress of the parents is not permitted confusion may arise." The use of "comfort" in the instruction given in *Anderson* was nevertheless held to be harmless error. Anderson v. Lale, *supra*, 216 N.W.2d 152 at p. 159 (S.D. filed March 19, 1974). In this connection it should be noted that both the South Dakota Supreme Court and the district court in the instant case cautioned the jury that it must not award any sum for the sorrow, mental distress and grief the parents may have suffered by reason of the death of their child.

4. *But see*, Anderson v. Lale, *supra*, 216 N. W.2d 152 at 158, 159 (S.D. filed March 19, 1974). Although we are concerned herein with the elements of "advice", "comfort", "assistance" and "protection," those decisions construing elements of "loss of society and companionship", etc., are sufficiently analogous to lend support to our disposition of the matter before us.

5. This aspect of the Wycko case was overruled in Breckon v. Franklin Fuel Co., 383 Mich. 251, 174 N.W.2d 836 (1970). However, after the Michigan legislature in 1971 amended its wrongful death statute to allow recovery for loss of society and companionship, the *Breckon* case was overruled and the *Wycko* principles reinstated. Smith v. City of Detroit, 388 Mich. 637, 202 N.W.2d 300 (1972).

fact that these elements of "pecuniary" loss do not automatically cease to exist when the child reaches majority, courts have allowed this same measure of damages to apply when a parent sues to recover for the death of an adult child. Fluor Corp. v. Sykes, 3 Ariz.App. 211, 413 P.2d 270 (1966); Currie v. Fiting,[6] 375 Mich. 440, 134 N.W.2d 611 (1965); McCorkell v. City of Northfield, 272 Minn. 24, 136 N.W.2d 840 (1965) (guardian allowed to recover); Sauke v. Bird, 267 Minn. 129, 125 N.W.2d 421 (1963); W. Prosser, Law of Torts § 127 at 905 (4th ed. 1971).

The instruction given by the trial judge in this case was promulgated in 1968 by the South Dakota State Bar Committee on Pattern Jury Instructions.[7] In its commentary on the instruction allowing recovery for loss of "advice, comfort, assistance and protection" the committee relied on Lanning v. Schulte, 82 S.D. 528, 149 N.W.2d 765 (1967), a decision based on the wrongful death statute prior to the 1967 amendment. The *Lanning* case held that a $500 recovery for the death of a five-year-old boy was "so shockingly low that it cannot be permitted to stand." *Id* at 768. The committee stated:

> While it is true that [Lanning] was under a nonpecuniary statute, nonetheless it indicates the thinking of our Court that a child's life is worth more to his parents than the mere value of the services he would have rendered less the cost of rearing the child. While the majority of jurisdictions still adhere to a rather strict pecuniary rule, the modern trend of judicial thinking on the question had condemned that rule as harsh and unrealistic in the modern world. (Pattern Jury Instruction No. 31.02).

■ A wrongful death statute is remedial in nature and it must be construed liberally in light of present social and economic conditions. Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355, 359 (1961); *accord* Anderson v. Lale, *supra*, 216 N.W.2d 152 at p. 155 (S.D. filed March 19, 1974). The modern trend toward a more liberal interpretation of "pecuniary injury" recognizes this principle and is an attempt to effectuate the underlying purposes of these statutes. Although the *Anderson* case dealt with the death of a minor child, we are persuaded that the same standards and rationale apply under circumstances where, as in the present case, the parents are seeking a recovery for the death of their adult child. Currie v. Fiting, *supra*, 375 Mich. 440, 134 N.W. 2d 611 (1965); Sauke v. Bird, *supra*, 267 Minn. 129, 125 N.W.2d 421 (1963).

■■ We give great weight to the determination of local law by the trial court. Luke v. American Family Mutual Insurance Co., 476 F.2d 1015, 1019 n. 6 (C.A.8 1972), aff'd, en banc, 476 F.2d 1023; *accord*, Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 491 F.2d 192 (C.A.8, filed Jan. 15, 1974). We therefore hold that the trial judge did not err by instructing the jury to consider the loss of advice, comfort, assistance and protection as elements of the parents' recovery for "pecuniary injury."

Although the court in the *Anderson* case found the inclusion of the term "comfort" to be objectionable, *see* note 3, *supra*, as in *Anderson*, we find such usage at most to be harmless error.

Appellants next contend that the trial court erred in allowing decedent's brother, Olaf Underdal, to testify concerning decedent's plans to return to Norway and build tourist cabins on his parents' land. Appellants allege that this testimony was inadmissible since it was premised upon speculation and conjecture, and thus should not have been considered by the jury in assessing damages.

Underdal testified that his brother had long planned to return to his native country upon the completion of his education in the United States, and to de-

---

6. *See* note 5, *supra.*

7. *See*, Johnson, Wrongful Death and Intellectual Dishonesty, 16 S.D.L.Rev. 36, 42 (1971).

velop his parents' farm into a resort; that this had been started by restoring existing cabins; that the total cost of constructing the resort would have been $20,000 if performed by the decedent, but would have cost $60,000 if performed by contractors; that the annual gross rental from the resort would have been approximately $10,000 to $14,000; that the net income the parents could have expected to receive upon completion of the resort was $5,000 to $7,000 per year; and that because of the father's failing health it was necessary to develop the farm for non-farm use.

In order for this evidence to be considered in assessing damages, South Dakota law requires that the beneficiaries show that they could "reasonably expect" to receive such benefits. McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485, 492 (1946); Tufty v. Sioux Transit Co., 69 S.D. 368, 10 N.W.2d 767, 769 (1943). This court has previously recognized that South Dakota has adopted a "liberal rule" in this area and that "any facts or circumstances tending to increase or reduce the pecuniary loss may properly be considered in determining the probable loss to the beneficiaries * * *." Minnehaha County v. Kelley, 150 F.2d 356, 362 (C.A.8 1945). See Tufty, supra; Stratton v. Sioux Falls Traction System, 55 S.D. 464, 226 N.W. 644 (1929).

Our review of the record convinces us that decedent's parents could "reasonably expect" the benefits referred to and that the trial court did not abuse its discretion in allowing the testimony. The record discloses that the decedent was "closer" to his parents than the other three brothers; that the decedent planned to return to Norway to seek employment; that the parents' farm was situated in an environment properly suited for hunting, fishing and other activities which are indigenous to

a resort area; and that the resort was beyond its planning stage inasmuch as decedent had already constructed one cabin and renovated other buildings in that area. The jury was entitled to consider the evidence that decedent would likely have constructed another nine cabins to complete the endeavor he had undertaken.[8]

Appellants next contend that damages for pecuniary injury must be reduced to present value. There is no decisional law in South Dakota which would require the trial judge to give an instruction to this effect. We hold that the trial judge did not abuse his discretion in refusing appellant's proposed instruction on this issue.

Finally, upon this record, we cannot say that a judgment of $35,000 is excessive. See Scoville v. Missouri Pacific, 458 F.2d 639, 647–648 (C.A.8 1972).

Affirmed.

---

8. Appellants rely on cases which hold that the decedent's intention to change business or resume an abandoned vocation is inadmissible. Boston & Albany R.R. Co. v. O'Reilly, 158 U.S. 334, 336, 15 S.Ct. 830, 39 L.Ed. 1006 (1895); Annot. 23 A.L.R.3d 1189

(1969). This reliance is misplaced. The construction of the planned resort was to be merely a temporary avocational pursuit by decedent and would have been by no means a change in occupation.