Rodman J. BETHEL, Personal Representative of the Estates of Raydon A. Hurst and Patricia A. Hurst, decedents; Peter A. Hurst, and Kevin A. Hurst, Plaintiffs,

v.

Marvin W. JANIS, Defendant.

Civ. No. 81–5018.

United States District Court, D. South Dakota, W.D.

Sept. 7, 1984.

Lonnie Bryan, Frank Wallahan, Wallahan Law Offices, Rapid City, S.D., for plaintiffs.

Scott Sumner, Banks & Johnson, P.C., Rapid City, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Plaintiffs, Florida residents, brought this diversity action pursuant to 28 U.S.C. § 1332, against defendant, a South Dakota resident, for damages arising from a two

car head-on collision that occurred within the boundaries of the Cheyenne River Sioux Indian Reservation in South Dakota in 1979. Plaintiffs sought damages under the South Dakota Wrongful Death statute, SDCL § 21–5–7, for the deaths of their parents in the accident, in addition to injuries suffered by plaintiffs themselves in the collision. The court, having considered the evidence presented at a bench trial, enters judgment for plaintiffs.

## FACTUAL BASIS

In August 1979, defendant Marvin W. Janis, an American Indian, was driving on Highway 212 in Dewey County, South Dakota, within the boundaries of the Cheyenne River Sioux Indian Reservation. Janis, who was later shown to have had a blood alcohol content of 0.21%, crossed the centerline and collided with an automobile operated by Raydon Hurst, a 49 year old school teacher from Florida. The Hurst vehicle also carried Raydon's wife, Patricia, 45, and their two minor children, Peter and Kevin. Raydon and Patricia were killed instantly, while Peter and Kevin survived with personal injuries. A third son, Terry, was not in the car. Janis subsequently pled guilty before this court on a charge of involuntary manslaughter for the death of Raydon Hurst. It is essentially undisputed that Janis' negligence was the sole proximate cause of the accident.

## JURISDICTION

■ As indicated by the factual summary just given, this is an action between non-Indian plaintiffs and an Indian defendant relating to the commission of a tort within Indian country. A South Dakota state court would have no jurisdiction over this case. *See Kain v. Wilson*, 83 S.D. 482, 161 N.W.2d 704 (1968); *Smith v. Temple*, 82 S.D. 650, 152 N.W.2d 547 (1967). While a series of Ninth Circuit cases, *R.J. Williams Co. v. Fort Belknap Housing Auth.*, 719 F.2d 979 (9th Cir.1983); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311 (9th Cir.1982); *Hot Oil Service, v. Hall*, 366 F.2d 295 (9th Cir.1966); *Lottell v. Nakai*, 344 F.2d 486 (9th Cir.1965), would similarly deny this court its jurisdiction here, a contrary rule is followed in this circuit. *Poitra v. Demarrias*, 502 F.2d 23 (8th Cir.1974) found diversity jurisdiction for a wrongful death action between an Indian plaintiff and an Indian defendant arising from an automobile collision on an Indian reservation. This Court's decision in *American Indian National Bank v. Red Owl*, 478 F.Supp. 302 (D.S.D. 1979), concluded that such diversity jurisdiction was not limited to cases involving only Indian parties. *See also American Indian Agricultural Credit Consortium, Inc. v. Fredericks*, 551 F.Supp. 1020 (D.Col. 1982) (where there is a "transaction between [a non-Indian plaintiff] and an individual member of a tribe acting solely in his private capacity ... [there is no] interference with reservation self government or internal tribal affairs ... [and a federal] court can properly exercise subject matter jurisdiction." 551 F.Supp. at 1022).[1] This court will therefore find that it possesses jurisdiction over this action.

## PUNITIVE DAMAGES

■ Plaintiffs claim that this court should award punitive damages because defendant was intoxicated at the time of the

---

**1.** The Court requested briefing from the parties on this issue in carrying out the Court's obligation to inquire into its own jurisdiction. *Lawrence County, South Dakota v. State of South Dakota*, 668 F.2d 27 (8th Cir.1982). Plaintiffs cited to the court the Cheyenne River Sioux Tribal Code, § 1–4–5, which provides that the Tribe has jurisdiction over all civil actions "except the [tribal] courts ... shall not assume jurisdiction over any ... matter which does not involve either the tribe, its officers, agents, employees, property or enterprises or a member of the tribe, or a member of a federally recognized tribe, if some other forum exists for the handling of the matter and if the matter is not one in which the rights of the tribe or its members may be directly or indirectly affected." Defendant has never made it appear on the record the tribe to which he belongs. Since it is admitted that the essential elements of diversity jurisdiction exist here—i.e., the parties are citizens of different states—plaintiffs have carried their burden of establishing jurisdiction. It would have then been incumbent on defendant to prove any additional fact tending to defeat jurisdiction.

accident. It is true that defendant pled guilty to involuntary manslaughter before this Court in the death of Raydon Hurst.[2] Punitive damages are, of course, awarded as punishment for outrageous conduct and to deter similar conduct in the future. Restatement (Second) of Torts § 908 (1979). Outrageousness may be concluded from the defendant's evil motive or reckless indifference to the rights of others. *Id.* In South Dakota, punitive damages may be awarded in the discretion of the finder of fact "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed ... for the sake of example, and by way of punishing the defendant." SDCL § 21–3–2. It is this court's view that the record, which essentially does no more than to prove the fact of defendant's intoxication, is totally inadequate to show the actual or presumed malice necessary to grant an award of punitive damages. On this record, it is clear that the drunkenness alone is insufficient to sustain a cause of action for punitive damages. *See Giddings v. Zellan*, 82 App.D.C. 92, 160 F.2d 585 (1947), *cert. den.*, 332 U.S. 759, 68 S.Ct. 61, 92 L.Ed. 345 (1947). Further, punitive damages are ordinarily not awardable under a wrongful death statute. Restatement (Second) of Torts § 908, comment a, (1979)[3]. The South Dakota Wrongful Death Statute, SDCL § 21–5–7, is no exception to this general rule. It is fundamental that in the absence of a statute providing for recovery, no cause of action for wrongful death lies. *Jirsa v. Ice*, 88 S.D. 209, 213, 217 N.W.2d 465, 467 (1974). Accordingly, an action brought under the wrongful death statute is an exclusive remedy and the legislature is free to impose restrictions upon it. *Hoekstra v. Helgeland*, 78 S.D. 82, 111, 113, 98 N.W.2d 669, 684, 686 (1959). In an earlier form, the South Dakota Wrongful Death statute did indeed allow for the recovery of punitive damages. In 1887, however, the legislature amended the statute to allow recovery of only actual or compensatory damages. *Smith v. Chicago, Mil. &. St. P. Ry. Co.*, 6 S.D. 583, 587–88, 62 N.W. 967,.968 (1895). As *Smith* indicates, removal of the word "punitive" from the statute left pecuniary damages as the exclusive remedy.[4] *Id.* This court is compelled, therefore, to find that the general statute allowing punitive damages, SDCL § 21–3–2, does not apply to the Wrongful Death statute.

This court must accordingly deny any recovery of punitive damages in this action, whether for the wrongful death of Raydon and Patricia Hurst or for the personal injuries of Kevin and Peter Hurst.

## PREJUDGMENT INTEREST

Plaintiffs request an award of prejudgment interest on all damages recovered. Plaintiffs apparently concede that they are not entitled to interest under SDCL § 21–1–11, and it is clear that they are not. SDCL § 21–1–11 has been primarily applied in contract actions, *see Northwestern Eng'g. Co. v. Thunderbolt Enters. Inc.*, 301 N.W.2d 421, 425 (S.D.1981); *North River Ins. Co. v. Golden Rule Constr. Co.*, 296 N.W.2d 910, 914 (S.D. 1980). As *Cole v. Melvin*, 441 F.Supp. 193,

---

**2.** 18 U.S.C. § 1112 provides that involuntary manslaughter is the "unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce ·death."

**3.** Other jurisdictions supporting this view include Minnesota, Wisconsin and North Dakota. *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226 (Minn.1982); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437, 13 ALR 4th 1 (1980); *Hyyti v. Smith*, 67 N.D. 425, 272 N.W. 747 (1937).

**4.** At the time of the decision in *Smith v. Chicago, Mil. & St. P. Ry. Co., supra*, 6 S.D. 583, 62 N.W. 967, the Wrongful Death statute allowed recovery for "damages". This statute was repealed in 1909. The 1909 Wrongful Death statute codified the approach taken by the courts and specifically employed the words "pecuniary injury" in the statute. Note, *South Dakota Wrongful Death: Loss of Society and Companionship as Pecuniary Loss*, 13 S.D.L.Rev. 232, 232–34 (1968). *See also, Anderson v. Lale*, 88 S.D. 111, 216 N.W.2d 152 (1974).

210 (D.S.D.1977), put it, "the test for awarding interest is not whether liability was clear, but whether (assuming liability) the damages were reasonably ascertainable by reference to prevailing markets."

This test can hardly be said to be satisfied by the bulk of the wrongful death and personal injury claims here. The monetary valuations of the personal injuries suffered by Peter and Kevin Hurst, their pain and suffering, the lost instruction, training, education, guidance, advice and counsel and homemaking services of the parents, and the lost companionship and society of their parents, are by necessity extremely difficult to set. The loss of support the children could have expected from their parents, while somewhat more easily quantifiable, is also highly uncertain. For none of these categories of damages may it be said that they "were reasonably ascertainable by reference to prevailing markets."

 Plaintiffs do request interest under SDCL § 21–1–13, which allowed the finder of fact discretionary power to award interest in "an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice." For the same reasons given in the preceding discussion of punitive damages, the court finds no basis for the award of interest for "oppression, fraud, or malice." Likewise, the Court finds that plaintiffs have presented no persuasive reasons why the record here justifies an award of interest, and it is therefore denied, with the exception of the funeral expenses for Raydon and Patricia Hurst, and the medical and hospital expenses for Peter and Kevin. These elements obviously stand on different footing and prejudgment interest of 15% is granted pursuant to SDCL § 54–3–4, for those sums. *Safeco Ins. Co., v. City of Watertown, S.D.*, 538 F.Supp. 49 (D.S.D. 1982). Given the fact the accident, deaths, burials and hospitalization all occurred in mid-August, 1979, the court will utilize the date of September 1, 1979, as the date upon which these expenses became fixed.

### DAMAGES FOR WRONGFUL DEATH

*Loss of Financial Support.* The largest single category of compensatory damages plaintiffs seek is for the support plaintiffs could have expected from their parents but for their deaths. Plaintiffs calculate this amount by taking Raydon Hurst's 1978 salary as a science and math teacher, $23,-764, then assuming a six percent salary raise for each of the remaining fifteen years in Raydon's working-life expectancy, and concluding that the resulting total, $621,484, is the sum to which they are entitled. While this court entertains some doubts about the validity of any calculation that projects a school teacher to have an annual salary of $60,367 in 1994, there are much more fundamental difficulties with the amount of plaintiffs' claim.

Damages for wrongful death in South Dakota must be "proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought." SDCL § 21–5–7. As interpreted by *Hodkinson v. Parker*, 70 S.D. 272, 275, 16 N.W.2d 924, 926 (1944), this means that the "amount of recovery must be based upon expenses necessarily incurred, and a reasonable expectation of benefits which would have resulted from the continued life of deceased." While proof of past and future gross earnings is certainly relevant in determining the level of future benefits that could be reasonably expected from the decedent, *see Snodgrass v. Nelson*, 369 F.Supp. 1206, 1212 (D.S.D.1974) *aff'd.* 503 F.2d 94 (8th Cir.1974); *Smith v. Presentation Academy of Aberdeen*, 61 S.D. 323, 248 N.W. 762 (1933); S.D. Pattern Jury Instructions, Civil § 31.01 (1968), plaintiffs are hardly entitled to the *full* amount of these future earnings. As *Darnell v. Panhandle Cooperative Ass'n*, 175 Neb. 40, 120 N.W.2d 278, 286 (Neb.1963) put it, "the plaintiff may not recover the value of the earnings lost ... the recovery must be limited to the value of the amount which the beneficiaries would have received from the earnings of the deceased." *See also, Tufty v. Sioux Transit Co.*, 69 S.D. 368, 372, 10 N.W.2d 767, 768–69 (1943) and cases cited therein.

■ The showing of expected future support presented by plaintiffs was perfunctory at best, but this court concludes that the record contains sufficient proof of a reasonable expectation of such support. It appears that, although Peter and Kevin were not in college at the time of his death, Raydon Hurst intended to assist each of his sons to get a college education. Further, the third son, who did not appear at the trial, Terry Hurst, was twenty-one at the time of the accident, and was also living in his parents' home and receiving his living expenses. At the time of the accident, Kevin was thirteen years old, and Peter was eighteen years old. The court finds that, upon all the evidence, plaintiffs have shown that Raydon and Patricia Hurst would have supported both Peter and Kevin Hurst until both could be reasonably expected to complete college, or until both were twenty-two. The court also finds it more likely than not that Raydon and Patricia would have continued to contribute to Terry's living expenses for another year, particularly in view of the fact his parents had bought Terry a car. Terry, however, had, after one brief attempt, apparently elected not to attend college, and this court accordingly cannot find it proven that the decedents would ever have contributed to his further education.

■ There is, of course, "no mathematical rule or formula", *Tufty, supra,* 10 N.W.2d at 769, by which the amount of future support can be calculated, but "uncertainty as to the measure or extent of the damages does not bar recovery." *Kowing v. Williams,* 75 S.D. 454, 67 N.W.2d 780, 783 (1954). Drawing upon its own experience, the court finds that it is reasonable that Raydon and Patricia Hurst would have expended about $350 a month, or $4,200 a year, for meeting the personal expenses (food, clothing, insurance, transportation, utilities, etc.) for each son. In the case of Kevin, this would be for nine years, or $37,800. In the case of Peter, this would be for four years, or $16,800. In the case of Terry, this would be $4,200. The Court will also set the approximate cost of college at $4,000 a year for four years. Thus, both Kevin and Peter should receive an additional $16,000 for loss of expected college support, or a total of $53,800 for Kevin Hurst, and $32,800 for Peter Hurst, and $4,200 for Terry Hurst.[5]

■ *Loss of Instruction, Moral Training, Education, and Other Parental Services.* There has been a considerable amount of inconsistency in this century in South Dakota regarding whether instruction, moral training, etc., provided by the deceased can be compensable losses. *See Halvorsen v. Dunlap,* 495 F.2d 817, 819 (8th Cir.1974). It seems clear from the current state of the law, however, that these elements are recoverable. S.D. Pattern Jury Instructions, Civil, § 31.01, for instance, instructs the jury that it may consider, in awarding damages, the "instruction, moral training and superintendence of education decedent might reasonably have given his children had he lived" and the "counsel, guidance and aid decedent would reasonably have given ... had he lived." *See also Gilbert v. Root,* 294 N.W.2d 431 (S.D.1980), which makes it clear that recovery may be made for losses of other than mere financial support.

The proof of these services was clear. It appears that Patricia Hurst, aside from her normal duties as a homemaker, taught her sons ceramics. Both Raydon and Patricia taught Peter how to ride horses, and both helped with Peter and Kevin's homework. Both parents provided moral correction, generally by means of reasoning with their children rather than corporal punishment. Presumably, Raydon also taught his sons

---

**5.** There is nothing in the record giving this court any guidance in, or suggesting that this court should, reduce any of the future damages to present value. "It is, of course, fundamental that no [such reduction] is warranted unless it is supported by the evidence." Stein, *Damages and Recovery: Personal Injury and Death Ac-tions,* 345 (1972); *Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652 (1st Cir.1981). *See also Kowing, supra,* 67 N.W.2d at 783, "Matters in mitigation of damages constitute a defense and the burden of pleading and proving that damages would have been lessened ... was on defendants."

the basics of fishing, boating and camping on the family's vacations, and involved all his sons in the care of the family's property.

■ Normally, the "method of proving pecuniry injury and the value of the services lost would be the costs of replacing the services." *Gilbert v. Root, supra,* 294 N.W.2d at 432. The only direct proof on replacement value offered was that Raydon Hurst received approximately $16 an hour for tutoring services, and to an extent this does provide a limited basis for quantifying the award for these damages. On the other hand, it is also true that the value of parental services is incapable of exact proof, and must be determined from the fact of the relationship and the parents' characters and dispositions. *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632 (Ia.1969); *Rogow v. United States,* 173 F.Supp. 547 (S.D.N.Y.1959). In any event, it is clear from the evidence that had his parents lived, Kevin would have received the full benefit of his parents' instruction, guidance and services in the areas summarized earlier, at least until he reached majority. Further, since it is also clear that his parents would have in all probability assisted him through college, Kevin could reasonably have expected further instruction and guidance, though on a lesser scale, during that period of his life. These services are, by necessity, valuable, and the court finds upon all the evidence adduced, that a reasonable award for the deprivation of instruction, guidance and services for Kevin Hurst is $20,000.

The evidence is persuasive too, that Peter Hurst could have expected further guidance from his parents as he went through college. Peter's course of study in college is related to veterinary medicine; this field of interest was encouraged from an early age by Peter's parents, who bought him a horse, taught him to ride, and frequently attended the horse shows Peter entered. It is reasonable to infer that Raydon and Patricia Hurst would have continued to take an active interest and involvement in Peter's progress in his studies.

The court finds, therefore, that the evidence supports an award for Peter Hurst in the amount of $10,000 for the deprivation of his parents' instruction, guidance and services. Terry, on the other hand, did not testify at the trial, and the court simply has no basis for finding that the Hursts would have continued to provide him with any of these services. The court must therefore deny any award to Terry in this category.

■ *Lost Companionship and Society.* This category was recognized in South Dakota by *Anderson v. Lale,* 88 S.D. 111, 121, 216 N.W.2d 152, 158 (1974), which stated that "the better rule is to include loss of companionship, society, advice, assistance and protection as elements of damages in wrongful death cases wherein the decedent was a minor." *Halvorsen v. Dunlap, supra,* 495 F.2d at 821, found that the same damages could be recovered for an *adult* child. It is true that neither case addresses the question of whether damages can be recovered for the loss of companionship and society suffered by children by the death of their parents, and defendant argues that such damages should be limited to cases where the decedent was a child. Defendant, however, offers no rationale and no persuasive authority for this argument, and this court views such a result as arbitrary and absurd. As *Halvorsen v. Dunlap, supra,* stated, a "wrongful death statute is remedial in nature and it must be construed liberally in light of present social and economic conditions .... [the court is] persuaded that the [*Anderson*] standards and rationale apply under circumstances where, as in the present case, the [children] are seeking a recovery for the death of their [parents]." *See Iowa-Des Moines National Bank v. Schwerman Trucking Co.,* 288 N.W.2d 198 (Ia.1980).

The Hurst family, before the tragic incident that occasioned this action, was described as "close knit". The entire family participated in frequent outdoor activities as a group, including fishing, boating and camping. Both parents, insofar as it was possible, attended every athletic function

that involved their sons, and took an interest in all their sons' activities. The entire family worked together in the upkeep of their yard, and went together to frequent entertainments, such as movies. Clearly, the society and companionship of their parents was a valuable component of the lives of Terry, Peter, Kevin Hurst, and this court finds, upon all the evidence, that an award of $25,000 for each son is appropriate for this element of damages. *See Anderson, supra*, 216 N.W.2d at 159–160.

■ *Burial Expenses.* Plaintiffs claim $6,611.35 for funeral expenses, [plaintiff's brief filed July 17, 1984 at 4,] and defendant does not dispute this amount, [defendant's brief filed July 31, 1984 at 2]. This amount is clearly recoverable, *see* S.D. Pattern Jury Instructions, Civil, § 31.01, item 9, and the court orders that such amount is awarded plaintiffs, with prejudgment interest of $4,529 from September 1, 1979 to date of judgment.

## DAMAGES FOR PERSONAL INJURIES

In addition to damages for the wrongful death of their parents, Kevin and Peter Hurst seek damages for injuries sustained by them in the same car accident. Kevin Hurst received a concussion, lacerations in the facial area, and multiple bruises. He was hospitalized for four days and suffered pain from these injuries for about one and one-half weeks. The lacerations left scars; other than that, however, Kevin sustained no permanent injuries.

The second vertebra of Peter Hurst's neck was fractured, forcing him to wear a cervical collar for about one year. He testified that he still has occasional problems with his neck. Peter also fractured the metacarpal bone in his left hand, which has resulted in the shortening of his middle finger. He wore a cast for this for about one month, and suffered pain in the hand for about three weeks longer. In addition, there was a laceration over Peter's left eye, which has left a scar. The ligaments, cartilage, tendons and blood vessels were torn in Peter's right ankle. He was obliged to wear casts on this ankle for at least nine months. Some discoloration remains on his ankle today, although it will eventually disappear. Peter was hospitalized for four days.

It is true, of course, that plaintiffs are entitled to an award for their pain and suffering. South Dakota Pattern Jury Instructions, Civil, § 30.05. It is also true that there "is no precise calculation which will determine what is fair and reasonable compensation for pain and suffering ... [and] 'of necessity, the measurement of such compensation must be left entirely to the [finder of fact.]' " Stein, *Damages and Recovery: Personal Injury and Death Actions*, 16 (1972). In making the finding, the court:

> may consider the nature and extent of the injuries, the suffering occasioned by the injuries, and the duration and the pain ... [and] the age, health, habits, and condition of the injured party before his injury as compared with his condition as a result of the injury.

*Ibid* at 17.

■ Keeping in mind these familiar factors, the court finds that, on the record presented, the pain suffered by Kevin, though real, was comparatively minor and short-lived. The court therefore concludes that an award of $2,500 is appropriate for Kevin's pain and suffering. South Dakota law appears to require testimony about the impact scarring would have on a plaintiff to justify a recovery for such injury, *Koenig v. Weber*, 84 S.D. 558, 174 N.W.2d 218 (1970). Beyond an exhibition of the scars, no such testimony was presented on this issue, unlike *Koenig*, in which there was both lay and expert testimony as to the effect of scarring, and the court will accordingly deny recovery for the scarring claim.

■ Peter's injuries were substantially more severe. His neck pain and discomfort lasted for a substantial amount of time, and he was also forced to endure pain and limitations in the use of both one foot

and one hand for varying lengths of time. Peter testified that these disabilities prevented him from engaging in horseback riding and attending college for about a year. Given this evidence the court finds that an award of $10,000 must be made to Peter for pain and suffering from the accident. For the reasons given above for Kevin's scarring, the court denies any recovery for the injury to his finger and the long term—though not permanent—scarring of his ankle. Likewise, the court must deny any award for future neck pain. To recover damages for future pain or suffering or permanent injury, a plaintiff must show these elements with reasonable certainty. *Klein v. W. Hodgman & Sons, Inc.*, 77 S.D. 64, 69, 85 N.W.2d 289, 292 (1957). Furthermore, if the claim for future suffering is subjective, as it is here, corroborating evidence from a medical expert is required. *Id.* at 71, 85 N.W.2d at 294. Peter has failed, in this court's view, to show future pain and suffering or permanent injury with reasonable certainty, and has certainly failed to present corroborating medical testimony.[6]

Finally, both Kevin and Peter are entitled to recover their hospital and medical expenses—$1,410 in the case of Peter, with $966 prejudgment interest—and $471.79 in the case of Kevin, with prejudgment interest of $323.16.

## CONCLUSION

Upon all the evidence, the Court awards plaintiffs $207,010 for the wrongful death of Raydon and Patricia Hurst. The court further awards Kevin Hurst $3,294.95, and Peter Hurst $12,376 for personal damages sustained by them in the accident. The clerk shall enter judgment accordingly. This opinion constitutes this court's findings of fact and conclusions of law.

6. Both Kevin and Peter request, as part of their claim for damages for pain and suffering, compensation for their presence at their parents' death. *See* plaintiffs' brief filed July 17, 1984 at 3–4. While both were in the back seat of the

car at the time of the accident, neither remembered anything about the accident, and plaintiff's failed to present *any* proof of their reaction to it. This is a totally inadequate record for the award of damages.